STATE OF NORTH CAROLINA v. NEAL FRANCIS AHEARN

No. 596A82

(Filed 8 March 1983)

1. **Criminal Law § 138— Fair Sentencing Act—need of trial judge to treat offenses separately**

   In every case in which the sentencing judge is required to make findings in aggravation and mitigation to support a sentence which varies from the presumptive term, each offense, whether consolidated for hearing or not, must be treated separately, and separately supported by findings tailored to the individual offense and applicable only to that offense. Further, where factors are listed in the disjunctive, trial judges are cautioned to eliminate those portions inapplicable to the particular case.

2. **Criminal Law § 138— felonious child abuse—sentencing hearing—wrongful consideration of "heinous, atrocious or cruel" aggravating factor**

   In a felonious child abuse case, an aggravating factor that the offense was especially heinous, atrocious or cruel was not supported by the evidence which tended to show that the child had been struck on at least three occasions, tied to his crib, and placed under a mattress.

3. **Criminal Law § 138— Fair Sentencing Act—error in finding or findings in aggravation—case must be remanded**

   In every case in which it is found that the judge erred in a finding or findings in aggravation and imposed a sentence beyond the presumptive term, the case must be remanded for a new sentencing hearing.

4. **Criminal Law § 138; Parent and Child § 2.2— fair sentencing hearing—felonious child abuse—consideration of age of victim as aggravating factor**

   In a prosecution for felonious child abuse, the trial court did not err in the sentencing hearing by considering as a factor in aggravation that the victim was very young or mentally or physically infirm. The fact that the victim was very young was not an element necessary to prove felonious child abuse, and was therefore properly considered as an aggravating factor. G.S. 14-318.4.

5. **Criminal Law § 138— Fair Sentencing Act—dangerousness to others—aggravating and mitigating factor—dangerousness to self not proper aggravating factor**

   In imposing a sentence for felonious child abuse, the trial court did not err in finding as an aggravating factor that defendant was dangerous to others as a result of his social and emotional problems even though evidence of his social and emotional problems was also considered in mitigation. However, the trial court erred in finding as an aggravating factor that defendant was dangerous to himself since such circumstance bears no relation to the statutory purposes of sentencing or the length of sentence. G.S. 15A-1340.1(a); G.S. 15A-1340.3.

6. **Criminal Law § 146.5— no right to appellate review of guilty plea**

   A defendant is not entitled to appellate review, as a matter of right, of the court's acceptance of his guilty plea. G.S. 15A-1444(a) & (e).

State v. Ahearn

**7. Parent and Child § 2.2— felonious child abuse—sufficiency of evidence**

Evidence that a 24-month-old baby was the victim of battered child syndrome, that there were bruises covering most of the baby's body, and that the child had a neck burn, was sufficient to provide a factual basis for defendant's plea of guilty to felonious child abuse. G.S. 14-318.4(a) and G.S. 15A-1022(c).

**8. Criminal Law § 138; Homicide § 31.6— voluntary manslaughter—sentencing phase—consideration of aggravating factors**

In a prosecution for voluntary manslaughter, the trial court did not err in finding as aggravating factors that the offense was especially heinous, atrocious or cruel, that the victim was very young, or mentally or physically infirmed, and that defendant was dangerous to others. The trial court did err in finding as a factor in aggravation defendant's dangerousness to himself since this factor bears no relationship to the statutory purposes of sentencing.

**9. Criminal Law § 138— sentencing phase—consideration of improper mitigating factor**

In a prosecution for felonious child abuse and voluntary manslaughter, the trial court erroneously considered as a mitigating factor for the voluntary manslaughter offense that "[p]rior to arrest or any early stage of the criminal process, the defendant voluntarily acknowledged wrong-doing in connection with the offense to a law enforcement officer," since defendant acknowledged his wrongdoing only with respect to the felonious child abuse offense. Furthermore, defendant's plea of guilty could not be considered as a factor in mitigation.

DEFENDANT appeals from a decision of the Court of Appeals, one judge dissenting, which affirmed judgments entered by *Small, J.,* at the 2 November 1981 Criminal Session of Superior Court, PASQUOTANK County.

Upon his pleas of guilty, and following a hearing pursuant to North Carolina's Fair Sentencing Act, G.S. § 15A-1340.1 to -1340.4, defendant received prison sentences of sixteen years for voluntary manslaughter and five years for felonious child abuse, both sentences exceeding the presumptive terms prescribed by G.S. § 15A-1340.4(f). Pursuant to G.S. § 15A-1444(a1), he appealed as a matter of right to the Court of Appeals. After determining that the trial court improperly relied upon several aggravating factors in sentencing defendant, the Court of Appeals nevertheless held that defendant had "failed to carry his burden of showing grounds for reversal of the sentences imposed by showing he was prejudiced by the court's erroneous findings in aggravation." 59 N.C. App. 44, 50, 295 S.E. 2d 621, 625 (1982).

For the reasons set forth below, we find that the trial court erred in its findings on aggravation to the actual prejudice of the defendant. We hold, therefore, that the decision of the Court of Appeals must be reversed and the case remanded for a new sentencing hearing.

Evidence at defendant's sentencing hearing consisted of testimony from the forensic pathologist who conducted an autopsy on the body of the victim; a psychologist who reported on defendant's mental and emotional condition; and the investigating officer who, in addition to apprising the court of the events connected with the crime, read verbatim into the record a transcript of the interrogation of the defendant. Also before the court were numerous photographs of the victim's body and the crime scene, various medical reports, letters from defendant's family and friends, and notes written by the defendant himself. Taken together, we believe this evidence provided the trial judge with an unusually complete and thorough record upon which to base his assessment of both the crimes and the defendant. Before Judge Small were the following facts:

On 21 July 1981, two year old Daniel Joseph Bright died of a cerebral hemorrhage caused by multiple blows to his head which were inflicted by "some sort of a blunt object." The investigating officer testified that "the little fellow's face had been beaten, both eyes were black, on the side of his head there was a tremendous bulge on the side of that which indicated it was swollen." An autopsy revealed bruises covering much of the baby's body, including his chest, abdomen, arms, legs and back. There were abrasions or skin burns around his neck indicating that something had been pulled or tied around that area. The hematoma and bruises around his head appeared to be recent, while other bruises had been partially discolored indicating wounds inflicted three to seven days before his death. In addition to a skull fracture, x-rays revealed a fracture of the right clavicle or collarbone and a leg fracture. At the time of his death, Daniel Bright wore a cast covering the lower section of his abdomen and his right leg. The upper portion of the cast appeared to be broken off. Excluding the leg fracture which was the result of an accident some weeks earlier and which had been treated, the examining physician concluded that Daniel Bright was the victim of "battered child syndrome" which he described as follows:

The battered child syndrome has been described as a pattern of injuries, not always the same group of injuries but a group of injuries that go together, including fractures, usually fractures of arms, or legs, or sometimes skull fractures, and bruises that appear to have happened over a period of time, old as well as recent bruises, sometimes internal injuries, lacerations or hemorrhages of internal organs associated with blows to the abdomen, and often subdural hemorrhages under the scalp. . . .

The defendant had moved in with the baby's mother, Gladys (Risa) Bright, five weeks earlier. He had met her at a bar. For two weeks the pair lived together alone while Daniel remained in the hospital under treatment for his broken leg. Although defendant has been deaf since birth, nevertheless Risa Bright took full advantage of him once the baby returned home from the hospital. The defendant cooked, cleaned, washed, fed and cared for the baby while the mother spent her time away from home. Defendant became increasingly dissatisfied with the arrangement, angry and resentful at being left with the responsibilities of home and child, and frustrated by the baby's difficult moods. He expressed his concern to the mother, suggesting that she send the baby to its father.

Defendant admitted slapping the baby on at least three occasions, once on the arm, once on the leg, and once on the side of his neck. He had also tied the baby down in its playpen with a sheet. He admitted blindfolding the baby and placing him face down between the mattress and bedsprings. There is conflicting testimony as to which, if either of these latter abuses, caused the burns discovered around the baby's neck. Risa Bright was aware of each of these incidents but expressed no disapproval.

Defendant further admitted that he and Risa Bright smoked marijuana regularly; that he "just blew some smoke in [Danny's] face one time and Risa laughed, Danny coughed and that was all"; and that he had given the baby "a taste, a sip of beer, that was it. Risa said nothing."

Defendant's version of the events leading up to the baby's death is as follows:

Sometime before 10:00 a.m. defendant bathed the baby. He slapped him "a little hard on the side of the neck" because

"Daniel doesn't like a bath and he was fussing." Risa Bright left home to visit a neighbor at approximately 10:30 a.m. Defendant placed the baby sitting upright on a bed and went outdoors. Sometime later he returned to the house to check on the baby and found him with his head twisted and on the floor, and the cast caught in the bed rail. "His breathing was very weak and he had thrown up on the side of his face." Defendant picked the baby up and broke open the cast "so he could breathe better." Frightened and upset, defendant then ran the four-tenths of a mile to the neighbor's home to find Risa Bright. The baby was still alive when they returned but died shortly after reaching the hospital.

In searching the house, investigating officers found pieces of the baby's cast in a woodstove in the den.

In a letter to a friend which defendant's mother took from a trash can, defendant wrote "I don't mean cause hit by post of bed board because Daniel was layed on the floor so he fell from our bed."

The autopsy report was clearly inconsistent with defendant's account.

However, until the attorneys' closing arguments, one could only speculate as to how and why the fatal injuries were inflicted on Daniel Bright. The record discloses the following statement made by defendant's counsel:

> Sometime between 11 and 12 o'clock that morning Neal went to the kitchen, the child was in the adjacent room, the child was all right, standing at a table, the child falls near a stove, but that is not the problem. Neal comes out, picks up the child and carries him back to the front bedroom and puts him on the bed, and then Neal goes out and there is some debris in the yard from that Saturday party that has been referred to in the evidence. Neal cleans up the debris, and sits down on the front porch and cools off a little while. And then about midday, about 12 o'clock, he goes back to the front bedroom and checked on the child, and the child had fallen off the bed and was on the floor, with his head on the floor, but I know that doesn't kill a child because I have interviewed several doctors and I heard one testify this morning, but the child at that moment is not fatally injured.

Something triggers. Neal picks up the child, you saw a reference to it in that letter he wrote that his mother fished out of the trash can. I know what happened as much as one can determine what happened, from the horse's mouth itself. I spent not hours with him, but days, and he told me what happened. The child was killed by, how many times I don't know, being forced against that bedpost, that's the blunt object the doctor told us about, I want the Court to know it, I want somebody to know it besides myself, and that's where death came.

The defendant's evidence consisted primarily of the results of psychological testing he underwent in preparation for the sentencing hearing. From the psychologist's report, we find that defendant

was a very sick baby who remained in an incubator for nearly three weeks after birth. During the first year of life Neal continued to be ill and did not develop normally. The family was first told by the doctors at Brook Army Hospital in San Antioni [sic] that Neal might have cerebral palsy. Finally when Neal was approximately one year old, doctors confirmed that he had nerve damage resulting in profound deafness. Mrs. Ahearn reported that Neal's early childhood proved to be very difficult for the family. Neal was an aggressive child who had temper tantrums and frequently broke things including his hearing aids. Mrs. Ahearn felt that Neal did not respond to their limits and discipline. In 1963, at the age of five, Neal was enrolled in Saint John's School for Deaf in Milwaukee, Wisconsin. Neal remained there until 1974 when he was sent home due to his behavior problems and inability to be controlled by the staff. Neal then attended school in Elizabeth City for two years. Again he did poorly, so in 1976 he was sent to the North Carolina School for the Deaf in Morganton. Neal again had difficulty conforming to rules and eventually left the school without graduating. Since Neal returned home from the North Carolina School for the Deaf his behavior has presented increasingly serious problems for his family. Possibly due to his deafness, he has had difficulty in obtaining a job. His mother intervened and obtained several jobs for him. However, due to his personality problems, he has been unable to sustain useful work activity

for any extended period of time. There have also been additional behavior problems. Frequently over the last few years, Neal has left home without giving his parents notice and driven to distant parts of the United States. He has then needed his parents to arrange for his transportation back to Elizabeth City.

Defendant acknowledged excessive use of alcohol and street drugs during the year prior to 21 July 1981.

The results of the Hiskey-Nebraska Test of Learning Aptitude indicated that the defendant functions in the average range of intellectual ability when compared to other deaf persons. He scored above average on the Weschler Adult Intelligence Scale (non-verbal subtest).

The report continues:

> The results of both the intellectual and personality tests reveal no evidence of psychosis. However, the results paint a picture of a young man who has serious emotional problems. Neal's self-esteem is poor. He has a limited ability to describe or understand himself and has a marked difficulty viewing himself from the perspective of others. He has difficulty using his imagination or his inner resources to place himself in the future or understand his past. Neal also has great difficulty imagining or perceiving the emotions of others. This leaves him frequently unable to empathize with the needs and feelings of others. Neal tends to see and place his own needs first with little ability to understand why he would place another's needs above his own. In this sense, his relationships are very childlike.

> Neal has difficulty with emotional situations. He finds these situations confusing. When presented with these situations he becomes impulsive and loses his capacity for good judgment. In emotional situations Neal has a poor ability to judge what action he should take, and the possible consequences of alternative actions. At times these situations cause Neal to use paranoid defenses. These paranoid defenses in turn cause him to misconstrue situations and the intent of the other parties. In summary, Neal has adequate intellectual abilities to understand social situations. However, when he is

in social situations that arouse strong emotion he is often unable to use his good judgment and may be carried away in the heat of the moment. This may lead to impulsive and poorly planned actions. At these times Neal may not see alternative solutions.

Dr. Catherine McGrogan, the testing psychologist, was asked the following question to which she responded affirmatively:

CROSS EXAMINATION by Mr. Watts:

Q. Dr. McGrogan, considering what you have just told us about Neal becoming very disorganized when confronted with emotional problems, and considering further what you have told us about Neal displaying symptoms of over aggressiveness since childhood, and indeed coupling that with his excessive use of alcohol and street drugs, you would say, wouldn't you Doctor, that he is indeed when he is in one of these episodes and that situation that he is dangerous to himself or to others?

Q. And he was likely involved in such an episode at the time he committed the crimes for which he has been charged and which he has entered pleas of guilty?

Dr. McGrogan clarified her answers by cautioning that in speaking of defendant's aggressiveness, she was referring to "social aggressiveness." "I wouldn't want to imply that person is any coldblooded or calculated, a manipulative kind of aggressive behavior." "I don't want people to confuse that with aggressive as in directed toward hurting others . . . ." Dr. McGrogan was then asked whether defendant "might intend to hit someone but not know how severely he was harming them by striking them," to which the doctor replied "or not knowing who he was intending to hit, just massively striking out at everything."

Letters from defendant's interpreter, teachers and family friends all suggest that while the defendant appears to be a well-groomed, cooperative and friendly young man, he is unable to handle frustrating situations and disappointments, is socially immature, and at times is distrustful due to his limited communication skills.

Defendant has no criminal record.

State v. Ahearn

The trial judge, although imposing sentences beyond the presumptive for both the felonious child abuse offense and the manslaughter offense, completed only one sentencing form, thus treating both offenses alike for purposes of listing the findings in aggravation and mitigation. Based on the evidence, he found three factors in aggravation and five factors in mitigation. In finding that the aggravating factors outweighed the mitigating, the trial judge stated that "[t]he fact that an aggravating, or the fact that aggravating factors may outnumber mitigating factors in no way controls the Judgment. Neither does the fact that the number of mitigating factors controls the Judgment, for one factor may be so dominant that it outweighs all other factors regardless of the number involved. I find this to be a case where the aggravating factors although few in number are substantially more dominant than the mitigating factors."

The Court of Appeals considered each offense separately and found error as illustrated in the following chart:

| | TRIAL COURT'S FINDINGS | COURT OF APPEALS' HOLDINGS | |
| | FELONIOUS CHILD ABUSE & MANSLAUGHTER | FELONIOUS CHILD ABUSE | MANSLAUGHTER |
|---|---|---|---|
| FACTORS IN AGGRAVATION | The offense was especially heinous, atrocious and cruel. | ERROR | ERROR |
| | The victim was very young or mentally or physically infirm. | ERROR (neither age nor his physical infirmity present) | NO ERROR |
| | Additional written finding: The defendant fails to control his emotions. He sometimes reacts violently to frustrations he experiences, and the defendant is dangerous to himself and to others and confinement is needed to ensure his safety and the safety of others. | NO ERROR | NO ERROR |

State v. Ahearn

| FACTORS IN MITIGATION | | | |
|---|---|---|---|
| | The defendant has no record of criminal· convictions. | NO ERROR | NO ERROR |
| | The defendant was suffering from a mental or physical condition that was insufficient to constitute a defense but reduced his culpability for the offense. | NO ERROR | NO ERROR |
| | The defendant's immaturity or his limited mental capacity at the time of commission of the offense reduced his culpability for the offense. | NO ERROR | NO ERROR |
| | Prior to arrest or at any early stage of the criminal process, the defendant voluntarily acknowledged wrong doing in connection with the offense to a law enforcement officer. | NO ERROR | NO ERROR |
| | The defendant has been a person of good character or has had a good reputation in the community in which he lives. | NO ERROR | NO ERROR |

The Court of Appeals held that despite these alleged errors, the trial court "could be well within its discretion in finding that the 'dangerousness' factor in the felonious child abuse case, and the 'dangerousness' and the 'very young victim' factors in the voluntary manslaughter case outweighed the mitigating factors in each case," and, as indicated, held that the defendant had failed to show prejudice.

*Rufus L. Edmisten, Attorney General, by Christopher P. Brewer, Assistant Attorney General, for the State.*

*White, Hall, Mullen, Brumsey & Small, by Gerald F. White, attorney for defendant-appellant.*

*Adam Stein, Appellate Defender, and James H. Gold, Assistant Appellate Defender, amicus curiae.*

MEYER, Justice.

Because this case presents us with our first opportunity to fully discuss the policies, purposes, and implementation of the new "Fair Sentencing Act," we find it appropriate to discuss the issues presented in the context of the historical background of

the Act and to set out pertinent portions of the statute.[1] In response to a perceived need for certainty in sentencing, to a perceived evil of disparate sentencing, and to a perceived problem in affording trial judges and parole authorities unbridled discretion in imposing sentences, Governor James B. Hunt, Jr., urged the adoption of presumptive sentencing legislation in an address to the North Carolina General Assembly in 1977. Originally enacted in 1979 as "An Act to Establish a Fair Sentencing System in North Carolina Criminal Courts," the Fair Sentencing Act underwent technical amendments in 1980 and more substantial amendments in 1981. *See* Comment, Criminal Procedure — The North Carolina Fair Sentencing Act, 60 N.C. L. Rev. 631 (1982). The sentencing procedures in the Act apply only to felonies committed on or after 1 July 1981. N.C. Gen. Stat. § 15A-1340.1(a) (Cum. Supp. 1981).

As set out in the Fair Sentencing Act,

> The primary purposes of sentencing a person convicted of a crime are to impose a punishment commensurate with the injury the offense has caused, taking into account factors that may diminish or increase the offender's culpability; to protect the public by restraining offenders; to assist the offender toward rehabilitation and restoration to the community as a lawful citizen; and to provide a general deterrent to criminal behavior.

G.S. § 15A-1340.3.

The Act provides in pertinent part:

> (a) . . . If the judge imposes a prison term, whether or not the term is suspended, and whether or not he sentences the convicted felon as a committed youthful offender, he must impose the presumptive term provided in this section unless, after consideration of aggravating or mitigating factors, or both, he decides to impose a longer or shorter term,

---

1. Although the principal provisions of the Act are codified in Chapter 15A, Article 81A of the North Carolina General Statutes, the Act resulted in revisions to other portions of the General Statutes. *See e.g.,* Chapter 14, Articles 1, 2, 2A, 33; Chapter 15A, Articles 58, 81A, 82, 83, 85, 85A, 89, 91; Chapter 148, Article 2, and Chapter 162, Article 4. Credit is due to the Office of the Appellate Defender for its excellent research in the preparation of an amicus brief from which this information is taken.

or unless he imposes a prison term pursuant to any plea arrangement as to sentence under Article 58 of this Chapter. In imposing a prison term, the judge, under the procedures provided in G.S. 15A-1334(b), may consider any aggravating and mitigating factors that he finds are proved by the preponderance of the evidence, and that are reasonably related to the purposes of sentencing, whether or not such aggravating or mitigating factors are set forth herein, but unless he imposes the term pursuant to a plea arrangement as to sentence under Article 58 of this Chapter, he must consider each of the following aggravating and mitigating factors:

(1) Aggravating factors:

(Here follows a list of the statutory aggravating factors.)

Evidence necessary to prove an element of the offense may not be used to prove any factor in aggravation, and the same item of evidence may not be used to prove more than one factor in aggravation.

The judge may not consider as an aggravating factor the fact that the defendant exercised his right to a jury trial.

(2) Mitigating factors:

(Here follows a list of the statutory mitigating factors.)

(b) If the judge imposes a prison term for a felony that differs from the presumptive term provided in subsection (f), whether or not the term is suspended, and whether or not he sentences the convicted felon as a committed youthful offender, the judge must specifically list in the record each matter in aggravation or mitigation that he finds proved by a preponderance of the evidence. If he imposes a prison term that exceeds the presumptive term, he must find that the factors in aggravation outweigh the factors in mitigation, and if he imposes a prison term that is less than the presumptive term, he must find that the factors in mitigation outweigh the factors in aggravation. However, a judge need not make any findings regarding aggravating and mitigating factors if he imposes a prison term pursuant to any plea arrangement

as to sentence under Article 58 of this Chapter, regardless of the length of the term, or if he imposes the presumptive term.

The Fair Sentencing Act is an attempt to strike a balance between the inflexibility of a presumptive sentence which insures that punishment is commensurate with the crime, without regard to the nature of the offender; and the flexibility of permitting punishment to be adapted, when appropriate, to the particular offender. Presumptive sentences established for every felony provide certainty. Furthermore, no convicted felon may be sentenced outside the minimum/maximum statutory limits set out for the particular felony. The sentencing judge's discretion to impose a sentence within the statutory limits, but greater or lesser than the presumptive term, is carefully guarded by the requirement that he make written findings in aggravation and mitigation, which findings must be proved by a preponderance of the evidence; that is, by the greater weight of the evidence. We are guided in our definition of the term preponderance of the evidence by the following statement which, although generally applied in civil cases, is no less appropriate for a sentencing hearing where the judge sits in a dual capacity as judge and jury:

'This preponderance does not mean number of witnesses or volume of testimony, but refers to the reasonable impression made upon the minds of the jury by the entire evidence, taking into consideration the character and demeanor of the witnesses, their interest or bias and means of knowledge, and other attending circumstances.' . . . There would seem to be great merit in the suggestion that what is meant by the formula is that the jury should be satisfied of the greater *probability* of the proposition advanced by the party having the burden of persuasion—i.e., that it is more probably true than not.

2 Stansbury's North Carolina Evidence § 212 (Brandis Rev. 1973).

The Fair Sentencing Act was not intended, however, to remove all discretion from our able trial judges. The trial judge should be permitted wide latitude in arriving at the truth as to the existence of aggravating and mitigating circumstances, for it is only he who observes the demeanor of the witnesses and hears the testimony. While he is required to justify a sentence which

deviates from a presumptive term to the extent that he must make findings in aggravation and mitigation properly supported by the evidence and in accordance with the Act, a trial judge need not justify the weight he attaches to any factor. He may properly determine that one factor in aggravation outweighs more than one factor in mitigation and vice versa. In this respect we quote with approval from an opinion written by Judge (now Justice) Martin:

> The fair sentencing act did not remove, nor did it intend to remove, all discretion from the sentencing judge. Judges still have discretion to increase or reduce sentences from the presumptive term upon findings of aggravating or mitigating factors, the weighing of which is a matter within their sound discretion. Thus, upon a finding by the preponderance of the evidence that aggravating factors outweigh mitigating factors, the question of whether to increase the sentence above the presumptive term, and if so, to what extent, remains within the trial judge's discretion.

> The discretionary task of weighing mitigating and aggravating factors is not a simple matter of mathematics. For example, three factors of one kind do not automatically and of necessity outweigh one factor of another kind. The number of factors found is only one consideration in determining which factors outweigh others. Although the court is required to consider all statutory factors to some degree, it may very properly emphasize one factor more than another in a particular case. N.C. Gen. Stat. 15A-1340.4(a). The balance struck by the trial judge will not be disturbed if there is support in the record for his determination.

*State v. Davis*, 58 N.C. App. 330, 333-34, 293 S.E. 2d 658, 661 (1982). *See State v. Melton*, 307 N.C. 370, 298 S.E. 2d 673 (1983).

Should the Appellate Court find no error in the trial court's findings in aggravation and mitigation, our standard of review respecting its decision to deviate from a presumptive term remains as it did prior to the effective date of the Act.

> There is a presumption that the judgment of a court is valid and just. The burden is upon appellant to show error amount-

ing to a denial of some substantial right. . . . A judgment will not be disturbed because of sentencing procedures unless there is a showing of abuse of discretion, procedural conduct prejudicial to defendant, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play.

*State v. Pope*, 257 N.C. 326, 335, 126 S.E. 2d 126, 130 (1962). *See State v. Jackson*, 302 N.C. 101, 273 S.E. 2d 666 (1981); *State v. Bright*, 301 N.C. 243, 271 S.E. 2d 368 (1980); *State v. Wilkins*, 297 N.C. 237, 254 S.E. 2d 598 (1979).

Furthermore, our appellate courts will apply the above-quoted standard in determining the propriety of the sentencing judge's decision to quantitatively vary the presumptive term to any substantial degree. Where the sentence ultimately imposed is within the statutory limits prescribed for the offense, we defer to the wisdom of our Legislature the appropriateness of the minimum or maximum punishment. We defer to the wisdom of the trial judge the appropriateness of the severity of punishment imposed on the particular offender.

[1] Turning now to the issues presented, we must first emphasize the inherent difficulties present in this appeal resulting from the trial court's failure to list separately the aggravating and mitigating factors for each of the two offenses. Separate findings as to the aggravating and mitigating factors for each offense will facilitate appellate review. Further, in the interest of judicial economy, separate treatment of offenses, even those consolidated for hearing, will offer our appellate courts the option of affirming judgment for one offense while remanding for resentencing only the offense in which error is found. This option is not available to us in the present case because error found on any aggravating factor applicable to only one offense will result in remand for resentencing on that offense, irrespective of whether the trial judge intended that the particular factor apply to one, the other, or both offenses. We therefore hold that in every case in which the sentencing judge is required to make findings in aggravation and mitigation to support a sentence which varies from the presumptive term, each offense, whether consolidated for hearing or not, must be treated separately, and separately supported by findings tailored to the individual offense and applicable only to that offense.

Furthermore, where factors are listed in the disjunctive, as for example, "the victim was very young, or very old, or mentally or physically infirmed," trial judges are cautioned to eliminate those portions inapplicable to the particular case.

For purposes of clarity, therefore, we will discuss defendant's assignments of error as they apply to each offense separately.

FELONIOUS CHILD ABUSE.

[2] Defendant contends that the trial court's finding that this offense was especially heinous, atrocious or cruel is not supported by the evidence. We agree. Excluding the injuries inflicted which resulted in Daniel Bright's death, the evidence discloses that the baby had been struck on at least three occasions, tied to his crib, and placed under a mattress. While this evidence is factually sufficient to support defendant's plea of guilty of felonious child abuse, and depicts shocking behavior on the part of the defendant, it falls short of supporting a finding that the offense was especially heinous, atrocious or cruel.

This Court has had occasion to construe the heinous, atrocious or cruel language as it applies in capital cases, where we find the following to be instructive.

In accordance with the dictates of the Eighth Amendment, our Court has adhered to the position that the aggravating circumstance of G.S. 15A-2000(e)(9) 'does not arise in cases in which death was immediate and in which there was no unusual infliction of suffering upon the victim.' . . . Instead, our Court has made it clear that the submission of G.S. 15A-2000(e)(9) is appropriate only when there is evidence of excessive brutality, beyond that normally present in any killing, or when the facts as a whole portray the commission of a crime which was conscienceless, pitiless or unnecessarily tortuous to the victim.

*State v. Pinch,* 306 N.C. 1, 34, 292 S.E. 2d 203, 227-28 (1982). *See State v. Hamlette,* 302 N.C. 490, 276 S.E. 2d 338 (1981); *State v. Goodman,* 298 N.C. 1, 257 S.E. 2d 569 (1979).

While we agree with the Court of Appeals that the trial court erred in its finding in aggravation that the offense of felonious child abuse was especially heinous, atrocious or cruel,

we do not agree with the Court of Appeals' reasoning or holding that the error was not prejudicial. We note that the Court of Appeals has, in addition to the present case, adopted similar reasoning and holdings in at least two others cases. *See State v. Goforth,* 59 N.C. App. 504, 297 S.E. 2d 128 (1982); *State v. Abee,* 60 N.C. App. 99, 298 S.E. 2d 184 (1982). Although finding no error, the Court of Appeals suggests similar reasoning in dicta in *State v. Morris,* 59 N.C. App. 157, 296 S.E. 2d 309 (1982), and has remanded a fourth case for resentencing under similar facts. *See State v. Thobourne,* 59 N.C. App. 584, 297 S.E. 2d 774 (1982). To illustrate not only the need for a consistent rule, but also the unsound reasoning inherent in the Court of Appeals' decisions, the following chart summarizes the facts and holdings of these cases.

## State v. Ahearn

| | MORRIS | AHEARN | GOFORTH | THOBOURNE | ABEE and JONES |
|---|---|---|---|---|---|
| FACTS | Defendant found guilty of armed robbery. | Defendant pled guilty to felonious child abuse and voluntary manslaughter. | Defendant found guilty of attempted first degree rape. | Defendant found guilty of possession with intent to sell and deliver marijuana. | Defendants pled guilty to second degree sexual offense. |
| TRIAL COURT'S FINDINGS | Aggravation — 3 Mitigation — 2 | Aggravation — 3 Mitigation — 5 | Aggravation — 3 Mitigation — 3 | Aggravation— 4 Mitigation — 3 | Aggravation — 8 and 7 Mitigation — 9 and 12 |
| SENTENCE | Presumptive (dicta suggests judgment affirmed had the sentence exceeded presumptive). | 3 years and 10 years respectively beyond presumptive for child abuse and manslaughter. | Twice the statutory presumptive term. | Maximum term of 5 years. | 8 years beyond presumptive. 6 years beyond presumptive. |
| COURT OF APPEALS' HOLDINGS | Error in at least one aggravating factor. | Error in two aggravating factors in child abuse and Error in one aggravating factor in manslaughter case. | Error in one aggravating factor. | Error in two aggravating factors. | Error in one aggravating factor. No error. |
| DISPOSITION | AFFIRMED. | AFFIRMED. | AFFIRMED. | REMANDED. | AFFIRMED. AFFIRMED. |

[3] What the Court of Appeals' decisions failed to consider and what the dissent in that court's opinion points out, is that any error in a sentencing procedure gives rise to a twofold analysis. Reliance on a factor in aggravation determined to be erroneous may or may not have affected the balancing process which resulted in the decision to deviate from the presumptive sentence. Certainly there will be many cases where, on remand, the trial judge will properly reach the same result absent the erroneous finding. We repeat that the weight to be given any factor is within the sound discretion of the sentencing judge. The judge is not required to engage in a numerical balancing process. By the same token, our appellate courts should not attempt to second guess the sentencing judge with respect to the weight given to any particular factor. Nor should appellate courts engage in numerical balancing in order to determine whether a sufficient number of aggravating factors remain to "tip the scales."

More important, however, it must be assumed that every factor in aggravation measured against every factor in mitigation, with concomitant weight attached to each, contributes to the *severity* of the sentence—the quantitative variation from the norm of the presumptive term. It is only the sentencing judge who is in a position to re-evaluate the severity of the sentence imposed in light of the adjustment. For these reasons, we hold that in every case in which it is found that the judge erred in a finding or findings in aggravation and imposed a sentence beyond the presumptive term, the case must be remanded for a new sentencing hearing.

Because defendant's additional assignments of error raise issues that are likely to recur at resentencing, we will treat each one in detail.

[4] Defendant contends that the trial court erred in its finding in aggravation for the offense of felonious child abuse that the victim was very young or mentally or physically infirm. In support of his argument he cites the language of G.S. § 15A-1340.4(a) that "[e]vidence necessary to prove an element of the offense may not be used to prove any factor in aggravation . . . ." He argues that because the age of the victim is an element of the offense of felonious child abuse, the trial judge was precluded from considering the age of the victim as an aggravating factor. We do not agree.

G.S. § 14-318.4 provides that:

(a) Any parent of a child less than sixteen years of age, or any other person providing care to or supervision of the child who intentionally inflicts any serious physical injury which results in:

(1) Permanent disfigurement, or

(2) Bone fracture, or

(3) Substantial impairment of physical health, or

(4) Substantial impairment of the function of any organ, limb, or appendage of such child, is guilty of a Class I felony.

(b) The felony of child abuse is an offense additional to other civil and criminal provisions and is not intended to repeal or preclude any other sanctions or remedies.

The age of the victim, while an element of the offense, spans sixteen years, from birth to adolescence. The abused child may be vulnerable due to its tender age, and *vulnerability* is clearly the concern addressed by this factor. The fact that Daniel Bright was *very young* (24 months) was not an element necessary to prove felonious child abuse, and was therefore properly considered as an aggravating factor. Furthermore, we disagree with the Court of Appeals' determination that the victim was not physically infirm. Daniel Bright was immobilized by a body cast.

[5] Defendant finally argues that the trial. court's finding that he was dangerous to himself and to others as a result of his social and emotional problems was error. It is defendant's contention that because the evidence of his social and emotional problems was considered in mitigation, the trial court erred in considering the same evidence in making a finding in aggravation. He further agues that the evidence does not support the finding. On this issue, the State answers as follows: (1) The Fair Sentencing Act proscribes only the use of the same evidence in proving more than one factor in aggravation. (2) The converse of defendant's argument would be to preclude consideration of evidence in support of a mitigating factor once the trial court applied that evidence in support of an aggravating factor. (3) There are many

examples of aggravating and mitigating factors which interact in such a way as to be susceptible of being proven by the same or similar evidence.

> Proof which establishes that a defendant held a public office or position of confidence at the time an offense related to that office was committed might also be properly considered as showing that defendant to be a person of good character and reputation in the community. The same evidence which establishes that a defendant was on probation or parole at the time an offense was committed, which could be viewed as a factor in aggravation, might also support a finding that defendant's prior performance on parole or probation was good, a factor in mitigation. The fact that a defendant is proven to be a chronic alcoholic or narcotics addict who needs rehabilitative treatment may be considered a factor in aggravation while a showing that the defendant was under the influence of alcohol or drugs at the time the offense was committed may be considered as a mitigating factor providing some explanation for a defendant's unlawful acts in reducing the defendant's culpability for the crime.

(4) The evidence supports the finding of dangerousness which is reasonably related to the purposes of sentencing one of which is "to protect the public by restraining offenders." G.S. § 15A-1340.3.

We find the State's arguments persuasive. The defendant does, in fact, suffer from a physical handicap as well as social and emotional problems. He is apparently unable to handle stress. He acts impulsively and fails to exercise good judgment. He does not foresee the consequences of his actions, nor can he accept responsibility for them. In short, his condition has manifested itself in the form of serious antisocial behavior and criminal acts. The trial court did not err in finding, as an aggravating factor, that defendant was dangerous to others. However, defendant's dangerousness to himself, while a valid consideration in determining whether he should be confined, bears no relation to the statutory purposes of sentencing or the length of his sentence. G.S. § 15A-1340.1(a). As to that portion of the finding, we hold there was error.

With respect to the factors found in mitigation for the offense of felonious child abuse, we find no error.

[6] As an additional assignment of error, defendant contends that there was no factual basis for his plea of guilty of felonious child abuse. The statute in effect at the time of defendant's appeal, G.S. 15A-1444(a), and upon which he relied, as printed in the General Statutes, provided that "[a] defendant who has entered a plea of *guilty* to a criminal charge, and who has been found guilty of a crime is entitled to appeal as a matter of right when final judgment has been entered" (emphasis added). Since that time the statute has been corrected through amendment, and now states that "[a] defendant who has entered a plea of *not guilty* to a criminal charge, and who has been found guilty of a crime, is entitled to appeal as a matter of right when final judgment has been entered." G.S. 15A-1444(a) (Cum. Supp. 1981) (emphasis added). The statute goes on to provide that

> (e) Except as provided in subsection (a1) of this section and G.S. 15A-979 and except when a motion to withdraw a plea of guilty or no contest has been denied, the defendant is not entitled to appellate review as a matter of right when he has entered a plea of guilty or no contest to a criminal charge in the superior court, but he may petition the appellate division for review by writ of certiorari. . . .

Thus, if we are to consider this assignment of error, we must treat it as a petition for writ of certiorari, which we do.

[7] The elements necessary for a conviction of felonious child abuse appear in G.S. § 14-318.4 which was enacted to "fill the gap between misdemeanor and homicide" and, "[w]hen the child's injuries result in death, the statute will provide a basis for a felony murder charge." 58 N.C. L. Rev. 1369, 1371 (1980). By virtue of his plea, defendant was charged with manslaughter rather than murder.

In *State v. Mapp*, 45 N.C. App. 574, 264 S.E. 2d 348 (1980), the Court considered and rejected a defendant's argument that the misdemeanor child abuse offense merged into and became a part of a charge of second degree murder. The Court wrote:

> The General Assembly apparently did not intend child abuse to be a lesser included offense or to merge with any other offense. While the General Assembly cannot, by statute, repeal the double jeopardy provisions of the Con-

stitution, in this situation the double jeopardy clause does not require merger.

*Id.*, at 585, 264 S.E. 2d at 356.

The Court considered only whether the same acts which gave rise to the murder also gave rise to the child abuse offense and found that "[t]here is also ample evidence that there were many separate acts of child abuse or child neglect which by themselves were not the proximate cause of the child's death." *Id. See State v. Walden,* 306 N.C. 466, 293 S.E. 2d 780 (1982).

G.S. § 15A-1022(c) provides that "[t]he judge may not accept a plea of guilty or no contest without first determining that there is a factual basis for the plea. This determination may be based upon information including but not limited to:

(1) A statement of the facts by the prosecutor.

(2) A written statement of the defendant.

(3) An examination of the presentence report.

(4) Sworn testimony, which may include reliable hearsay.

(5) A statement of facts by the defense counsel.

We have held that "[t]hat which [the trial judge] does consider, however, must appear in the record, so that an appellate court can determine whether the plea has been properly accepted." *State v. Sinclair,* 301 N.C. 193, 198, 270 S.E. 2d 418, 421 (1980).

Thus, in determining whether there is a factual basis for defendant's plea of guilty to the charge of felonious child abuse, we are bound by the record, and are foreclosed from considering only evidence of the act which caused Daniel Bright's death. We are left with testimony that the baby was the victim of battered child syndrome, based on the evidence of prior physical injuries. We deem this evidence sufficient to provide a factual basis for defendant's plea of guilty. *See* G.S. § 14-318.4(a)(2).

VOLUNTARY MANSLAUGHTER.

[8] The evidence supports the trial court's findings that this offense was especially heinous, atrocious or cruel. Daniel Bright was beaten to death—struck against a bed post with such force

that it shattered his cast and crushed his skull. We cannot know the extent of the fear, pain, and suffering he endured. His injuries were multiple, and death was not immediate. *See State v. Pinch,* 306 N.C. 1, 292 S.E. 2d 203.

Likewise we find no error in the trial court's finding in aggravation that the victim was very young, or mentally or physically infirm.

Further, we find, as we did in the felonious child abuse case, that the trial court properly considered defendant's dangerousness to others as an aggravating factor. Voluntary manslaughter is defined as the *unlawful* killing of a human being *without malice,* premeditation or deliberation. *State v. Holcomb,* 295 N.C. 608, 247 S.E. 2d 888 (1978); *State v. Wilkerson,* 295 N.C. 559, 247 S.E. 2d 905 (1978). It is mitigating factors, the heat of passion or the use of excessive force, that reduce the offense from murder to manslaughter. *Id.* It does not follow that the presence of these mitigating factors compels a negative finding as to dangerousness. The offender who, although sane, cannot control his emotions, who strikes out indiscriminately because of his own inadequacies, and who cannot exercise his human faculties of reason and judgment is as dangerous to society as the offender who targets his victim for a calculated motive.

The trial court erred, however, in finding as a factor in aggravation defendant's dangerousness to himself. As we have previously determined, this factor bears no relationship to the statutory purposes of sentencing. The case must be remanded for resentencing for this as well as for error in one finding in mitigation.[2]

[9] The trial court found as a factor in mitigation on both the felonious child abuse offense and the voluntary manslaughter offense that "[p]rior to arrest or at any early stage of the criminal process, the defendant voluntarily acknowledged wrong-doing in connection with the offense to a law enforcement officer." Defend-

---

2. G.S. § 15A-1335 provides that "[w]hen a conviction or sentence imposed in superior court has been set aside on direct review or collateral attack, the court may not impose a new sentence for the same offense, or for a different offense based on the same conduct, which is more severe than the prior sentence less the portion of the prior sentence previously served.

ant acknowledged his wrongdoing only with respect to the felonious child abuse offense. The record does not support this finding with respect to the offense of voluntary manslaughter. Defendant expressly denied any wrongdoing connected with the baby's death during his interrogation. The fact that he pled guilty to the charge has no bearing on the policy behind this factor in mitigation, *i.e.* that defendant showed remorse for his actions. As we have held that a defendant's failure to plead guilty to an offense cannot be used as a factor in aggravation, so his plea of guilty may not be considered as a factor in mitigation. *See State v. Boone*, 293 N.C. 702, 239 S.E. 2d 459 (1977).

The decision of the Court of Appeals is reversed and the case is remanded to the Court of Appeals for further remand to the Superior Court, Pasquotank County, for resentencing on both the offenses of felonious child abuse and voluntary manslaughter, in accordance with our opinion today.

Reversed and remanded.