STATE OF NORTH CAROLINA,
v.
JAMES NEAL HALLEY, Defendant.
No. COA09-1051.
Court of Appeals of North Carolina.
Filed March 2, 2010.
This case not for publication
Roy Cooper, Attorney General, by Mary Carla Hollis, Assistant Attorney General, for the State.
Parish, Cooke & Condlin, by James R. Parish, for defendant-appellant.
MARTIN, Chief Judge.
Defendant was indicted for one count of felony child abuse inflicting serious bodily injury and was found guilty by a jury. At a subsequent sentencing proceeding, the jury also found as an aggravating factor that "[t]he victim was very young." The trial court entered judgment sentencing defendant in the aggravated range to a minimum of 84 months and a maximum of 110 months imprisonment. Defendant gave notice of appeal.
The State's evidence tended to show that on 25 July 2007, defendant was left alone to care for K.M., a minor child, while her mother was at work. When the mother's stepbrother, Kevin Alexander, came home, defendant said, "Look at [K.M.'s] hands. She burned them on the swing." K.M.'s hands were blistered and K.M. was crying and appeared to be in pain. Mr. Alexander thought that the child needed to go to the hospital. Mr. Alexander testified that defendant seemed nervous because he said, "With what's going on in Pitt County, they're going to think I done something." Mr. Alexander, K.M., and defendant went to K.M.'s mother's workplace. Defendant told K.M.'s mother that K.M. had burned her hands on the swings at the park. Defendant, K.M., and Mr. Alexander then met Mr. Alexander's mother, Lydia Barnhardt, near her home. Mrs. Barnhardt described K.M.'s hands as "real high in blisters" and "oozing." She also stated that defendant seemed nervous. When Mrs. Barnhardt insisted that K.M. go to the hospital immediately, defendant said, "With everything going on in Pitt County, do you really think this is necessary?" Mrs. Barnhardt said yes and took K.M. to the hospital.
At the hospital, defendant told personnel that K.M. had burned herself on the swings. The emergency room doctor noted that defendant's explanation was inconsistent with K.M.'s wounds. K.M.'s burns appeared to be second or possibly third-degree burns. Dr. John David Hoover, a pediatric surgeon who examined K.M., testified that the burns would have been very painful. Dr. Hoover also believed defendant's account did not match K.M.'s injuries. He testified that grasping the swing set chains would not produce the burns, and a neurologically normal child, like K.M., would not stay in contact with a hot surface long enough to create these kinds of burns.
K.M. was transferred to the Jaycee Burn Center at the University of North Carolina at Chapel Hill on 31 July 2007. At the Burn Center, K.M. received medication for pain and also underwent a process called debridement to remove dead skin, a process which is both painful and frightening to the child. Dr. Dana Hagele, a pediatrician specializing in child abuse and neglect, wrote in her assessment of the case that the "burn pattern does not appear to be consistent with a history of an accidental burn as provided by [defendant]" and that "this case is highly concerning for inflicted trauma, otherwise known as child physical abuse." She also noted in K.M.'s medical records that "a potential mechanism of injury could include . . . [K.M. being] restrained [and] forcibly immobilized against a hot object or held up against some other hot object. . . . Restraint against a hot surface resulting in a second degree burn would have met with considerable pain and child resistance." Dr. Hagele also testified that K.M.'s hospital stay was prolonged.
Once K.M. was discharged from the Burn Center, she saw a nurse practitioner employed by UNC Hospitals for follow-up visits. In the notes from a follow-up visit on 7 September 2007, K.M. complained of pain with a full extension of her hand and K.M.'s mother reported that the hands appeared tight and could not be stretched out fully. During the 7 December 2007 visit, the nurse practitioner noted "pulling with flexion," "tightness," and that "contractions to the left hand are worsening." K.M. also saw a plastic surgeon, Dr. Charles Scott Holtman, who assessed whether K.M. would need surgery for the management of a hand contracture, a deficit "in function caused by scarring that limits the range of motion of a joint." Dr. Holtman noted at K.M.'s 7 January 2008 visit that K.M. had hypertrophic scars on both hands and deeper contractures which limited her range of motion. On 17 December 2008, despite treatment, K.M. still had a significant contracture and impairment of her hand. Dr. Holtman thought she would benefit from surgery to "release these contractures, resurface the hand and optimize her function." The procedure would require a skin graft, the insertion of metal pins, six weeks in a splint, removal of the pins, and six weeks of intensive physical therapy. Dr. Holtman testified that K.M.'s injury was permanent, that she has "scarring that will be present for the rest of her life," and that she has a current loss of function. Additionally, he testified, "she may have close to normal hand function some day, but it would be unlikely that she would have full ability or use of her hand."
While she was in the hospital, K.M. said that she had been burned on the swing. However, after she was released from the hospital, K.M. told Mr. Alexander that defendant "had burned her on the stove and it hurt really bad." K.M. also told Mrs. Barnhardt that defendant had burned her on the stove and told her maternal grandfather, Rodney Barnhardt, that defendant had hurt her. K.M. also told her paternal grandmother, Lisa Murray, that defendant burned her and when questioned K.M. demonstrated to her grandmother on a stool how defendant put her hands on a stove and burned her. Mrs. Barnhardt reported that after K.M. was released from the hospital, there was an incident in which K.M. seemed afraid of the stove. K.M.'s mother reported a similar incident of K.M. being fearful of the stove and stated that K.M. had told her, "Daddy James burned me on the stove." The Cabarrus County Department of Social Services ("DSS") investigated the incident and determined that K.M. could no longer have contact with defendant.
An officer with the Kannapolis Police Department and the DSS Investigator went to the park where the alleged burn took place and touched the swings on days that were as warm or warmer than the date of the injury. It was their opinion that K.M. could not have burned herself on the swings. A Kannapolis Park Manager also testified that this was the first time he had had a complaint of burns on the swings.
The State was also allowed to present evidence under N.C. Gen. Stat. § 8C-1, Rule 404(b) about a previous incident involving K.M. and defendant. The evidence concerning that incident tended to show that on the evening of 26 April 2007, the City of Greenville Fire Rescue responded to a call that a female was possibly seizing. The female was K.M. who was approximately two and half years old at the time. The child's mother was on the scene and told personnel that defendant had been watching the child while she was at work. K.M. was taken to the emergency room at Pitt County Memorial Hospital. She was diagnosed with acute water intoxication. Dr. Michael E. Reichel who attended to K.M. while she was in the hospital, spoke to both defendant and K.M.'s mother. Defendant told him that K.M. drank three cups of water over a two to three hour period. Dr. Reichel testified that defendant's account of what occurred was not consistent with the amount of water found in K.M.'s body. Dr. Reichel was also concerned because defendant did not immediately seek care for K.M.
Defendant first assigns error to the trial court's failure to submit to the jury the issue of defendant's guilt of felonious child abuse inflicting serious physical injury, as a lesser included offense of the charge of felonious child abuse inflicting serious bodily injury. See State v. Williams, 184 N.C. App. 351, 354, 646 S.E.2d 613, 615 (2007). "A defendant is entitled to have a lesser-included offense submitted to the jury only when there is evidence to support that lesser-included offense." State v. Smith, 351 N.C. 251, 267, 524 S.E.2d 28, 40, cert. denied, 531 U.S. 862, 148 L. Ed. 2d 100 (2000). The Class E felony offense of child abuse inflicting serious physical injury occurs when "any . . . person providing care to or supervision of a child less than 16 years of age who intentionally inflicts any serious physical injury upon or to the child." N.C. Gen. Stat § 14-318.4(a) (2009). The Class C felony offense of child abuse inflicting serious bodily injury is defined by statute as occurring when "any . . . person providing care to or supervision of a child less than 16 years of age . . . intentionally inflicts any serious bodily injury to the child." N.C. Gen. Stat. § 14-318.4(a3) (2009). Serious physical injury is defined as "[p]hysical injury that causes great pain and suffering" and includes serious mental injury. N.C. Gen. Stat § 14-318.4(d)(2) (2009). Serious bodily injury under this statute is defined as that which "creates a substantial risk of death or that causes serious permanent disfigurement, coma, a permanent or protracted condition that causes extreme pain, or permanent or protracted loss or impairment of the function of any bodily member or organ, or that results in prolonged hospitalization." N.C. Gen. Stat § 14-318.4(d)(1) (2009).
Defendant points to the testimony of Dr. Bruce Cairns, the medical director for the Burn Center. Testifying from the notes of a nurse practitioner who had seen K.M. during her follow-up visits, Dr. Cairns reports that at the 7 December 2007 visit, the nurse practitioner noted that K.M. played well with both hands and did not appear to be in pain. Defendant contends this testimony creates an issue of fact for the jury. However, Dr. Cairns's testimony does not negate any of the elements of felony child abuse inflicting serious bodily injury. While it is fortunate for K.M. that she was not still experiencing pain almost five months after her injury, the nurse practitioner still noted, at the 7 December visit, the contractual scars and stated that the contractions were getting worse in her left hand. Dr. Holtman would later testify that both the scarring and some limitation of hand function would be permanent. The prolonged hospitalization to which Dr. Hagele testified, the permanent disfigurement by the scarring, and the permanent impairment of the function of K.M.'s hand are not contradicted by Dr. Cairns's testimony and are unequivocal evidence of serious bodily injury. Therefore, an instruction on the lesser charge was not required. See Sansone v. United States, 380 U.S. 343, 350, 13 L. Ed. 2d 882, 888 (1965) ("A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense."); State v. Whitaker, 307 N.C. 115, 118, 296 S.E.2d 273, 274 (1982) ("The trial judge must charge on a lesser included offense if: (1) the evidence is equivocal on an element of the greater offense . . . and (2) absent this element only a conviction of the lesser included offense would be justified."). We, therefore, overrule this assignment of error.
Defendant combines his next three assignments of error. These assignments of error deal with the prior water intoxication incident. Defendant first contends that evidence of K.M.'s water intoxication while in his care three months before the injury at issue violates North Carolina Rules of Evidence 404(a) and (b). "We review a trial court's determination to admit evidence under N.C. R. Evid. 404(b) and 403, for an abuse of discretion." State v. Summers, 177 N.C. App. 691, 697, 629 S.E.2d 902, 907, appeal dismissed and disc. review denied, 360 N.C. 653, 637 S.E.2d 192 (2006).
Rule 404(b) "is a general rule of inclusion of [evidence of other crimes, wrong, or acts], subject to an exception if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." State v. West, 103 N.C. App. 1, 9, 404 S.E.2d 191, 197 (1991). The trial court ruled that the evidence was admissible for the purpose of showing the intent, identity of the perpetrator, a common plan or scheme, opportunity to commit the crime, and absence of any accident. As defendant has claimed that the burns were the result of an accident, and the evidence would support a finding that this was a pattern of abuse which occurred when the child was left alone with defendant rather than accidental, we conclude that the trial court did not err in admitting this evidence.
Defendant also claims that the events were not sufficiently similar. "When prior incidents are offered for a proper purpose, the ultimate test of admissibility is whether they are sufficiently similar and not so remote as to run afoul of the balancing test between probative value and prejudicial effect set out in Rule 403." Id. Although the type of injury and causation were different, each case was an incident of physical harm to the same victim when left alone in defendant's care.
A prior act or crime is sufficiently similar to warrant admissibility under Rule 404(b) if there are some unusual facts present in both crimes or particularly similar acts which would indicate that the same person committed both crimes. It is not necessary that the similarities between the two situations rise to the level of the unique and bizarre. However, the similarities must tend to support a reasonable inference that the same person committed both the earlier and later acts.
State v. Sokolowski, 351 N.C. 137, 150, 522 S.E.2d 65, 73 (1999) (internal quotation marks and citations omitted). We conclude that the two incidents are sufficiently similar and therefore overrule this assignment of error.
Defendant next challenges the testimony of Kevin Alexander and Lydia Barnhardt which reported two statements allegedly made by defendant in reference to the water intoxication incident. Kevin Alexander testified that defendant said, "With what's going on in Pitt County, they're going to think I done something." Lydia Barnhardt testified that defendant said, "With everything going on in Pitt County, do you really think this is necessary?" These statements show that defendant was nervous and was reluctant to seek medical care for K.M. after the burn incident. North Carolina Rule of Evidence 801(d)(A) provides that "[a] statement is admissible as an exception to the hearsay rule if it is offered against a party and it is . . . his own statement." N.C.G.S. § 8C-1, Rule 801(d)(A) (2009). "An admission is a statement of pertinent facts which, in light of other evidence, is incriminating." State v. Trexler, 316 N.C. 528, 531, 342 S.E.2d 878, 879-80 (1986). As defendant's own statements are incriminating, they qualify as admissions. Therefore, we overrule these assignments of error.
Defendant next contends that the trial court erred in failing to dismiss for improper venue. Defendant contends that the park where the accident allegedly occurred was in Rowan County, while he was indicted by the grand jury of Cabarrus County. Defendant alleges that no one testified that the house where the alleged crime occurred was in Cabarrus County. However, K.M.'s mother testified that her father's house in which she, K.M. and defendant lived when the injury occurred, was in Cabarrus County. Additionally, N.C.G.S § 15A-631 states that "the place for returning a presentment or indictment is a matter of venue and not jurisdiction." N.C. Gen. Stat. § 15A-631 (2009). This Court has stated in State v. Brown, 85 N.C. App. 583, 355 S.E.2d 225, disc. review and supersedeas denied, 320 N.C. 172, 358 S.E.2d 57 (1987) that "[q]uestions of venue . . . are waived by the failure to make a pretrial motion, even if the problem of venue arises from a variance between the indictment and the proof at trial." Id. at 587-88, 355 S.E.2d at 229. Defendant did not raise this issue until the conclusion of the State's evidence. Therefore, this assignment of error is overruled.
Defendant's final contention is that the use of the child's age as an element of the crime and as an aggravating factor for sentencing purposes was erroneous. Defendant concedes that the North Carolina Supreme Court has already addressed this issue in State v. Ahearn, 307 N.C. 584, 300 S.E.2d 689 (1983), but suggests that this holding violates the prohibition against double jeopardy. In Ahearn, our Supreme Court held that vulnerability rather than age was the quality addressed by the aggravating factor. Id. at 603, 300 S.E.2d at 701 ("The age of the victim, while an element of the offense, spans sixteen years, from birth to adolescence. The abused child may be vulnerable due to its tender age, and vulnerability is clearly the concern addressed by this factor."). It is our responsibility to follow the direction of the Supreme Court of North Carolina. See Cannon v. Miller, 313 N.C. 324, 324, 327 S.E.2d 888, 888 (1985). Therefore, this assignment of error is overruled.
No error.
Judges JACKSON and HUNTER, JR. concur.
Report per Rule 30(e).