STATE OF NORTH CAROLINA v. JAMES LEVONE MONK

No. 824SC691

(Filed 16 August 1983)

1. **Criminal Law §§ 29, 146.6— compelling defendant to take medication—moot issue**

The issue concerning the constitutionality of an order compelling defendant to take medication necessary to render him competent to stand trial was moot where the administration of all compelled medication had terminated some three months prior to defendant's trial.

2. **Criminal Law § 162.6— objection to evidence en masse—portion of evidence competent**

An objection to the admission of evidence *en masse* is ordinarily insufficient if any part of that evidence is competent.

3. **Criminal Law § 75.14— history of mental illness—competency of in-custody statements**

The evidence supported a determination by the trial court that in-custody statements made on three occasions by a defendant who had a history of mental illness were made freely and voluntarily after defendant knowingly, intelligently and understandingly waived his constitutional rights. Furthermore, a fourth statement made by defendant in his jail cell was not the result of custodial interrogation, and *Miranda* warnings were not required.

4. **Criminal Law § 5.1— insanity defense—denial of bifurcated trial**

The trial court in a homicide case did not abuse its discretion in the denial of defendant's motion requesting a bifurcated trial to allow one jury to pass on the issue of his sanity and a separate jury to pass on the question of guilt or innocence where the record revealed no substantial defense on the merits which could have been prejudiced by simultaneous presentation with an insanity defense.

State v. Monk

5. **Criminal Law § 128.2— motion for mistrial—improper testimony stricken—curative instructions**

The trial court in a homicide case did not err in failing to declare a mistrial when two witnesses testified that defendant's brother told them that defendant "did it" where the court allowed defendant's motion to strike this testimony and instructed the jurors to disregard it.

6. **Criminal Law § 63.1— mental capacity of defendant—nonresponsive answer—harmless error**

Error, if any, in the admission of a witness's testimony in response to a question concerning defendant's ability to distinguish right and wrong at the time of a killing that he believed defendant knew what he did was harmless.

7. **Criminal Law § 63.1— mental capacity—basis for opinion**

The trial court did not err in failing to strike testimony from two law enforcement officers that their opinions of defendant's mental capacity were based on the fact that defendant left or ran away from the crime scene.

8. **Criminal Law § 138— sentencing hearing—prior convictions—insufficient record**

The omission from the record on appeal of the transcript of defendant's sentencing hearing precluded the appellate court from reviewing defendant's contention regarding the sufficiency of the evidence to support the trial judge's finding that defendant had a prior conviction or convictions. App. Rule 9(b)(3).

9. **Criminal Law § 138— aggravating circumstance—age of victim—irrelevancy**

The trial court erred in finding the age of the victim as an aggravating circumstance in imposing a sentence on defendant for the shooting death of his stepfather.

Judge EAGLES concurs in the result.

APPEAL by defendant from *Bruce, Judge.* Judgment entered 4 March 1982 in Superior Court, DUPLIN County. Heard in the Court of Appeals 13 January 1983.

Defendant was charged with the 11 July 1981 murder of his stepfather. Several days after the offense occurred, the defendant, who had a long history of mental illness, was committed to Dorothea Dix Hospital for a mental examination to determine his competency to stand trial. During three days of his seventeen day stay at Dorothea Dix, defendant took his prescribed anti-psychotic medication but then refused to take any more. Defendant was released from the hospital and returned to the Duplin County Jail. On 9 October 1981, following a competency hearing, the court ordered that defendant be recommitted to Dorothea Dix and be

administered medication necessary to make him likely to become competent to assist in his defense. During his second commitment, which lasted 53 days, defendant was administered haldol, an anti-psychotic medication, and artane, a medication designed to relieve muscle tension which can be caused by haldol. Following this commitment, the court conducted another hearing and found, on 15 January 1982, that defendant was competent to stand trial.

A third hearing was later held on defendant's motion to suppress statements made to law enforcement officers in July and August of 1981. The court held these statements to be admissible, after finding that they had been freely and voluntarily given.

Prior to trial, the court denied a motion by defendant for a bifurcated trial on the issues of sanity and guilt. A number of other pretrial motions were made by defendant. Several of those motions are the subject of assignments of error and will be discussed in the opinion.

At trial, the State presented evidence tending to show that at about 3:30 or 3:45 p.m. on 11 July 1981, the defendant was at home alone with his stepfather, Isaac Miller. Between 5:30 and 6:00 p.m., Miller's brother, who lived nearby, heard a gunshot which he thought came from Miller's house. He saw defendant run from the direction of that house. At about 1:30 the next morning, near that house, Miller's son, Bryant, found Miller's body lying in a pool of blood. He had died from a gunshot wound to the neck. In July and August of 1981, defendant made several inculpatory statements to law enforcement officers, including an admission that he had killed his stepfather. Dr. Mary Rood, a forensic staff psychiatrist who examined the defendant at Dorothea Dix after the crime occurred, testified that in her opinion the defendant would have known the difference between right and wrong, with respect to killing someone, at the time the offense occurred.

Defendant presented numerous witnesses who testified that he was incapable of distinguishing right from wrong at the time of the alleged offense.

Defendant was convicted of voluntary manslaughter. From a judgment imposing a 20 year sentence, defendant appeals.

*Attorney General Edmisten, by William F. Briley, Assistant Attorney General, for the State.*

*Vance B. Gavin, for defendant appellant.*

JOHNSON, Judge.

Defendant brings forth 17 assignments of error on appeal which concern (1) his competency to stand trial, (2) the admission of his in-custody statements, (3) the court's failure to order a bifurcated trial, (4) the court's evidentiary rulings and (5) the sentence imposed on him.

I

The first two assignments of error we address are those involving defendant's competency to stand trial.

The court's order of 9 October 1981 recommitting defendant to Dorothea Dix provided, among other things, that:

4. The treating physician in his or her discretion shall administer such medication at such times as is necessary to make the defendant likely to become competent to assist in preparation of his defense and to participate in his trial so long as such medications do not create a substantial risk of serious or long term side effects. If the defendant refuses to voluntarily take the required and necessary medication, the attending physician or physicians and their staff assistants, are authorized and are directed by this court to utilize such medically safe procedures as they reasonably believe necessary to compel the patient to take the medication, so long as such procedures are reasonable under the circumstances and the life, health or safety of the patient is not endangered by these procedures which shall be consistent with the approved or acceptable medical practice under similar circumstances.

Defendant recognizes that G.S. 15A-1002 authorizes the court, in its discretion, to commit a defendant to a state mental health facility for observation and treatment when his capacity to proceed is questioned. He contends, however, that this court order, which forces him to take medication against his will, invades his constitutional rights. The second error complained of concerns the denial of, and later refusal to hear, a motion filed by defendant

after he was returned to the Duplin County Jail following his second commitment. In that motion, he requested that his medication be discontinued to enable the jury to observe him free from the influence of drugs. However, we note here that at that point in the proceedings such a request was unnecessary. The court's 9 October 1981 order, recommitting the defendant, did not contemplate that defendant would be compelled to take medication after his discharge from Dorothea Dix. No other order was entered requiring that drugs be administered to defendant after discharge or during trial. In the present case there is no evidence that the process or content of defendant's thoughts were affected by the drugs that he received. To the contrary, the evidence in this case shows that the medication would have a beneficial effect on defendant's ability to function.

[1] The North Carolina Supreme Court has recognized that a defendant, who is otherwise incompetent, may become competent as a result of receiving medication. *State v. Buie,* 297 N.C. 159, 254 S.E. 2d 26, *cert. denied,* 444 U.S. 971, 62 L.Ed. 2d 386, 100 S.Ct. 464 (1979). Our research has not, however, disclosed a North Carolina case determinative of the issue raised here—whether a defendant may be compelled to take medication necessary to render him competent to stand trial. There is authority in other jurisdictions which supports such an order; *State v. Law,* 270 S.C. 664, 244 S.E. 2d 302 (1978); *State v. Hayes,* 118 N.H. 458, 389 A. 2d 1379 (1978), as well as authority to the contrary, *State v. Maryott,* 6 Wash. App. 96, 492 P. 2d 239 (1971). We do not question the seriousness of the issues presented by defendant's assignments of error—the right to bodily integrity free from unwarranted infringement by the State; the right to control of one's own thought processes free from the influences of compelled psychotropic medication to insure the fairness of the adversary process; and the right to appear before the jury free from the effects of drugs that affect the thought, expression, manner and content of the person compelled to take the drugs. However, we need not address these issues in the case before us because the administration of all such compelled medication had terminated some three months prior to the time of defendant's trial. Therefore, the issue of whether defendant's right to appear before the jury free from the influence of psychotropic drugs and participate unimpaired in the adversary process is not implicated in this case

and the question concerning the constitutionality of the order of 9 October 1981 was thereby rendered moot.

We next consider defendant's contention that the court erred when it admitted opinion testimony from Dr. Robert Rollins, director of the Dorothea Dix forensic unit, at the hearing on defendant's motion questioning his capacity to proceed. Dr. Rollins, a medical expert in psychiatry, served as defendant's attending physician for several weeks during his second hospitalization while he was being administered medication. The testimony about which defendant complains is Rollins' opinion that defendant was competent to proceed even without medication. Rollins based this opinion on his conversations with Dr. Rood and on findings in her report. Defendant's argument is twofold: that Rollins' opinion should have been excluded because it was based entirely on Dr. Rood's report which was inadmissible, and because it was based on hearsay rather than personal knowledge.

[2] In our opinion, the defendant may not now question the admissibility of Dr. Rollins' opinion testimony. When Rollins was called as a witness, defense counsel entered a general objection. During Rollins' extensive testimony, counsel failed to object or move to strike the particular testimony which he now claims was erroneously considered by the court in determining whether defendant was competent to stand trial. An objection to the admission of evidence *en masse* is ordinarily insufficient if any part of that evidence is competent. *State v. Hodges*, 296 N.C. 66, 249 S.E. 2d 371 (1978). Since a great deal of Rollins' testimony was based on his own personal knowledge, and was, therefore, clearly competent, we find no error in the admission of his opinion concerning defendant's competency. Defendant's challenge to the court's order of 15 January 1982, determining him competent to proceed, is without merit.

In a related argument, defendant contends the court erred in refusing to hear a renewed motion questioning his capacity to proceed on the date of trial, 1 March 1982. We find no merit to this argument. The court declined to hear further evidence concerning competency only after being informed by defense counsel that the evidence would be substantially the same as it was when the court's 15 January 1982 ruling was entered regarding defendant's competency. Since there was no indication that there had

been any change in circumstances, there was no justification for another competency hearing to be conducted. We also find no merit to defendant's contention that the court erred in failing to rule on a pretrial motion, which he made pursuant to G.S. 15A-954, alleging a denial of his constitutional rights. In our opinion, this motion merely restates matters raised in other pretrial motions which had previously been considered and ruled upon by the court. The court was not required to rule again upon these matters.

II

[3] We now consider defendant's arguments relating to the order denying his motion to suppress in-custody statements made to law enforcement officers on 12 July, 12 August and 14 August 1981. At a hearing on this motion, testimony was given by two interrogating officers, as well as by a number of defense witnesses including defendant and a psychiatrist who treated him while he was an in-patient at Duplin General Hospital.

As to defendant's 12 July and 12 August in-custody statements, one of the law enforcement officers testified to the following: On both dates, he advised defendant of his constitutional rights, prior to obtaining any statements from him. Defendant appeared to understand, and responded to, the officer's questions regarding his *Miranda* rights. He signed a waiver of those rights on both occasions. His speech was coherent, and he did not appear to be intoxicated by alcohol or drugs. He agreed to talk without an attorney present, and he made statements to the officer without being threatened, coerced or promised anything. After making his statement on 12 July, defendant requested an attorney, and the officer immediately ceased questioning him. On 12 August, defendant asked, and was allowed, to make a phone call prior to being interrogated. The officer testified that on both dates defendant's statements were freely and voluntarily given. This evidence conflicted with evidence presented by defendant which tended to show that he could not fully comprehend the gravity of his situation or understand the meaning and intent of the *Miranda* warnings.

After hearing this evidence, the court entered an order finding that on each of these two occasions, when defendant talked to law enforcement officers, he knowingly and understandingly

waived his constitutional rights and freely and voluntarily made statements to the officers. These findings are conclusive on appeal if supported by any competent evidence, even where there is conflicting evidence. *State v. Harris*, 290 N.C. 681, 228 S.E. 2d 437 (1976). Based on these findings, the court concluded that the statements attributed to defendant on 12 July and 12 August were voluntarily and intelligently made. We hold that there was ample competent evidence to support the court's findings and that the findings in turn supported its conclusion of law.

The uncontradicted evidence shows that on 14 August 1981, an officer came to defendant's jail cell at defendant's request. Defendant initiated a conversation with the officer in which he confessed. He was not subjected to interrogation. He was immediately taken to the sheriff's office where he was read his *Miranda* warnings. Defendant agreed to talk to the officers, and in response to questioning, defendant stated that he had killed his stepfather. We find that defendant's initial statement, made in the jail cell, was not the result of custodial interrogation but was volunteered by defendant; thus no *Miranda* warnings were required. *State v. Blackmon*, 284 N.C. 1, 199 S.E. 2d 431 (1973).

As to his subsequent statement, which was made after he was advised of his constitutional rights, the State presented evidence that defendant appeared to understand his rights and questions regarding those rights. According to the officers, defendant signed a waiver of his rights and said he would talk with the officers without his attorney present. The testimony further showed that defendant's speech was coherent and that he did not appear intoxicated. He was allowed to make a phone call. There was evidence that no promises or threats were made to elicit his confession. The court found in its order that defendant knowingly, intelligently and understandingly waived his rights and concluded that defendant's statement was freely and voluntarily made. Again, we hold that there was ample competent evidence to support the court's findings and that the findings supported its conclusion of law. Defendant's assignments of error regarding the statements which he made to law enforcement officers are overruled.

## III

**[4]** Next, we consider the denial of defendant's pretrial motion requesting a bifurcated trial to allow one jury to pass on the issue of sanity and a separate jury to pass on the question of guilt or innocence.

A ruling on a motion to bifurcate rests within the sound discretion of the trial judge and is not reviewable absent abuse. *State v. Ward*, 301 N.C. 469, 272 S.E. 2d 84 (1980); *State v. Helms*, 284 N.C. 508, 201 S.E. 2d 850, *cert. denied*, 419 U.S. 977, 42 L.Ed. 2d 190, 95 S.Ct. 240 (1974). The North Carolina Supreme Court in *Helms* noted that:

> Other jurisdictions hold that the sound exercise of the trial court's discretion should result in a bifurcated trial *only* when "a defendant shows that he has a substantial insanity defense and a substantial defense on the merits to any element of the charge, either of which would be prejudiced by simultaneous presentation with the other." *Contee v. United States*, 410 F. 2d 249 (D.C. Cir. 1969).

284 N.C. at 513, 201 S.E. 2d at 853. In *Helms*, the trial court's denial of a defendant's motion to bifurcate was upheld because the record revealed no substantial defense on the merits which could have been prejudiced. We have the same situation here. Defendant alleged in his motion that he had a substantial defense on the merits because there were no eyewitnesses to the crime, no weapon was ever found, and all the evidence was highly circumstantial. These allegations, at most, merely constitute a weakness in the State's case-in-chief, and not a defense on the merits. We have reviewed the record, and having found no substantial defense on the merits, we conclude that the motion was properly denied.

## IV

We now address defendant's arguments concerning various evidentiary rulings made by the court.

**[5]** First, defendant contends the court should have declared a mistrial when two witnesses testified that defendant's brother told them that defendant "did it." Although defendant admits that the court allowed his motion to strike this testimony and in-

structed the jurors, in substance, to disregard it, he contends the court's instructions were inadequate to erase these damaging statements from the jury's mind.

We believe that the court's prompt action in striking the testimony and so instructing the jury was sufficient to cure any possible prejudice. Jurors are assumed to have sufficient intelligence to understand and comply with the court's instructions and are presumed to have done so. *State v. Ray*, 212 N.C. 725, 194 S.E. 482 (1938). A defendant's motion for mistrial must be granted, pursuant to G.S. 15A-1061, "if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." The decision as to whether such prejudice has occurred is addressed to the discretion of the trial judge. *State v. Thomas*, 52 N.C. App. 186, 278 S.E. 2d 535, *disc. rev. all'd*, 304 N.C. 198, 287 S.E. 2d 127 (1981); *State v. Rogers*, 52 N.C. App. 676, 279 S.E. 2d 881 (1981). His decision is not reviewable absent a showing of gross abuse of discretion. *State v. Foster*, 284 N.C. 259, 200 S.E. 2d 782 (1973). We find no such abuse.

[6] Defendant next contends that the court should have sustained his objection to testimony from a State's witness that "I believe he [defendant] knew what he done; I believe that." Defendant asserts that the witness' answer was not responsive to the question asked ". . . as to whether or not . . . [defendant] had the capacity to distinguish between right and wrong at the time of the alleged murder . . . ." Although the witness' answer could have been more responsive, no prejudice has been shown. Error, if any, was clearly harmless.

[7] Defendant further argues that the court erred in failing to strike testimony from two law enforcement officers that their opinions of defendant's mental capacity were based on the fact that defendant left or ran away from the scene. Defendant argues that the court should have stricken this testimony primarily because it was not based on the witnesses' personal knowledge. We find no prejudicial error. It was certainly proper for the State to try to elicit the bases for both witnesses' opinions to enable the jury to determine the credibility of those opinions. In any event, there could have been no prejudice to defendant since the

jury had heard his confession of 14 August in which he stated that he got frightened and ran down the road after he killed his stepfather. Furthermore, the record reveals that one of the witnesses had been told by defendant himself that he, the defendant, ran away after committing the offense. This assignment of error is overruled.

V

The final question presented is whether defendant's sentence is supported by the evidence. Defendant contends that the trial court erred in imposing a sentence greater than the presumptive term upon insufficient evidence of aggravating circumstances. Defendant was sentenced to 20 years imprisonment, the maximum time under G.S. 14-1.1(a)(6) for the Class F felony he committed. The presumptive sentence for this crime is six years under G.S. 15A-1340.4(f)(4). Pursuant to G.S. 15A-1340.4(a)(1), Judge Bruce found the following factors in aggravation:

10. The victim was very old or physically infirm.

15. The defendant has a prior conviction or convictions for criminal offenses punishable by more than 60 days confinement.

16. Additional written findings of factors in aggravation.

The defendant has the propensity due to mental disease to commit dangerous and violent acts in response to hallucinations and delusions and therefore needs to be confined in order that society be protected.

[8] The record on appeal contains several volumes of stenographic transcripts of defendant's *voir dire* hearings and trial. However, the record does not contain a transcript of the sentencing hearing and is devoid of any other evidence in either testimonial or narrative form demonstrating the events that transpired during the sentencing hearing. Rule 9(b)(3) of the Rules of Appellate Procedure states that the record on appeal shall contain so much of the evidence as is necessary for the understanding of all errors assigned. The omission from the record on appeal of the transcript of defendant's sentencing hearing precludes this Court from reviewing defendant's contention regarding the sufficiency of the evidence to support the trial judge's finding that

defendant had a prior conviction or convictions. We are fully cognizant of the fact that the State has the burden of proving that defendant was convicted and that he had or waived counsel, *State v. Thompson*, 60 N.C. App. 679, 300 S.E. 2d 29 (1983); *State v. Farmer*, 60 N.C. App. 779, 299 S.E. 2d 842 (1983), before the defendant's sentence may be aggravated by this factor. However, it is simply impossible to review the sufficiency of the State's evidence supporting Finding No. 15 without the inclusion of the sentencing hearing transcript containing that evidence in the record on appeal. In contrast, the record is sufficient to permit review of the two other findings in aggravation because the evidence supporting them was presented during the phases of defendant's trial for which transcripts were filed.

[9] We conclude that the trial judge erred by finding, as an aggravating factor, that the victim was very old. The age of the victim may not be used as an aggravating factor unless it appears that the defendant took advantage of the victim's relative helplessness to commit the crime or that the harm was worse because of the age or condition of the victim. *State v. Gaynor*, 61 N.C. App. 128, 300 S.E. 2d 260 (1983). The age of the victim to a shooting offense is irrelevant. *Id.* Therefore, it was error to find this factor in aggravation of defendant's offense.

The trial judge made an additional finding in aggravation, that defendant's mental disease rendered him dangerous to society. In *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689 (1983), the Supreme Court recognized that the same evidence establishing the factor of mental condition may be found to either reduce culpability, in mitigation, or to show dangerousness, and thus support a finding in aggravation. *See also State v. Chatman*, 308 N.C. 169, 301 S.E. 2d 71 (1983). Inasmuch as this case is to be remanded for a new sentencing hearing because the judge erred in finding the age of the victim in aggravation and imposed a sentence beyond the presumptive term, we do not reach the question presented by defendant's assigning error to Finding No. 16, as it may not recur upon resentencing. For the reasons stated, defendant's sentence must be vacated.

We conclude that although defendant had a fair trial free from prejudicial error, defendant's sentence is to be vacated and the case is to be remanded for a new sentencing hearing.

Affirmed in part, reversed in part, and remanded.

Judge HEDRICK concurs.

Judge EAGLES concurs in the result.