An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-831

Filed 4 February 2026

New Hanover County, No. 16CR059007-640

STATE OF NORTH CAROLINA

       v.

JOSHUA LEWIS JOHNSON

Appeal by Defendant from Order entered 13 February 2024 by Judge Richard Kent Harrell in New Hanover County Superior Court. Heard in the Court of Appeals 12 August 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Benjamin Szany, for the State.*

> *George B. Currin for Defendant-Appellant.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Defendant was convicted by jury of Intentional Child Abuse Resulting in Serious Bodily Injury, Negligent Child Abuse Resulting in Serious Bodily Injury, and Assault on a Child Under Age 12. In a previous appeal to this Court, Defendant asserted errors by the trial court and argued his trial counsel had provided ineffective

assistance. *State v. Johnson,* 272 N.C. App. 695, 845 S.E.2d 209, 2020 WL 4462549 (unpublished). We held the trial court had not erred and dismissed the appeal as to his claim for ineffective assistance of counsel without prejudice to his filing of a Motion for Appropriate Relief (MAR) with the trial court. *Id.* Defendant filed an MAR, which the trial court denied. Defendant petitioned this Court to issue a Writ of Certiorari to review the Order denying Defendant's MAR, which we allowed.

The Record on Appeal tends to show the following:

On 12 November 2016, Defendant was working from home and watching his four-year-old son Mike[1] while his wife Erin was at work. Mike had been diagnosed with a developmental delay and, among his symptoms, had limited speech capabilities.

At noon that day, Defendant called Erin on her work phone number at the Coast Guard Command Center in Wilmington. The call was recorded per Coast Guard policy of monitoring all incoming and outgoing calls from the Command Center. Over the phone, Defendant told Erin "I think your son is dead." When Erin asked him what had happened, he told her:

> You should have left him at mom's. He literally fucked up my whole office and I threw his ass across the room and now he is acting like his eyes are rolled back in the back of his head and he doesn't want to get up.
>
> . . . .

---

[1] A pseudonym used to protect the privacy of the minor child

> I don't know what the hell is wrong with him. He is fucking actually not coherent. I don't know what the hell is wrong with him.

Erin asked Defendant multiple times to take Mike to the hospital, and he told her, "I am not taking him to the hospital. No. I will not." She then asked Defendant to take Mike to Defendant's mother, and Defendant said "No, you should have left him at fucking mom's last night. Bye."

Erin then drove home. At trial she described how she found Mike:

> He looked like—he looked like he had a stroke. He had one leg that was twitching and one leg that was straight. He was laying on the ground. And when I say laying on the ground, laying on the floor with his legs facing—facing me and his—and his eyes, one looked like rolling in the back of his head and one was shut. And I just knew something just wasn't right about the situation and that he needed to go to the hospital.

Defendant told Erin that he had fallen asleep and when he woke up he found Mike unresponsive on the floor of the bathroom. He said Mike could have fallen from a step stool in the bathroom. Defendant carried Mike to Erin's car, and Erin drove Mike to the hospital. Defendant did not accompany them to the hospital.

At the hospital, Mike received emergency treatment for injuries including a skull fracture, retinal hemorrhages in both eyes, bruising on the left side of his head, arm, and chest, and subdural bleeding between his brain and skull. He was then airlifted to UNC Medical Center for treatment by a pediatric neurosurgeon. Mike remained at UNC for nine days.

Defendant was interviewed by law enforcement and a social worker from the New Hanover Department of Social Services (NHDSS). He told both he had fallen asleep and woke up to find Mike laying on his back and unresponsive in the bathroom. Defendant was placed under arrest. While in custody he was interviewed by another NHDSS social worker, who asked him about his phone call with Erin and whether it was true he had thrown Mike "against the wall." Defendant told her he had said he "threw him across the room, not into a wall."

On 13 February 2017 Defendant was indicted for Intentional Child Abuse Resulting in Serious Bodily Injury, Negligent Child Abuse Resulting in Serious Bodily Injury, and Assault on a Child Under 12. His case came on for jury trial on 18 February 2019.

At trial Dr. Molly Berkoff, the medical director of UNC Children's Hospitals maltreatment team, testified that the skull fracture, brain bleeding, and retinal hemorrhaging constituted a traumatic brain injury. She testified there had been a substantial risk of death from the subdural bleeding compressing Mike's brain. She also stated her opinion that these injuries were not the result of a fall because his bruising appeared in multiple different planes along his body, and they were likely from a "major traumatic incident." Other medical professionals who had treated Mike also stated their opinions that the injuries were unlikely to have resulted from a fall from a stool and were more likely the result of trauma.

The jury found Defendant guilty on all charges. During sentencing, the trial

court submitted statutory aggravating factors to the jury. For both the Intentional and Negligent Child Abuse charges, the trial court submitted the aggravating factor that the victim was very young. For the Negligent Child Abuse charge, the trial court additionally submitted as an aggravating factor that Defendant's conduct was especially heinous, atrocious, or cruel (EHAC). The trial court did not define either statutory aggravating factor to the jury, and Defendant did not request additional instruction be given or object to the jury charge. The jury found the existence of each aggravating factor as to the charges for which they were submitted.

The trial court found the existence of four mitigating factors, applicable to all charges. It determined the mitigating factors were outweighed by the aggravating factors in each charge, and imposed consecutive sentences in the aggravated range for each: 240 to 300 months for Intentional Child Abuse Resulting in Serious Bodily Injury and 40 to 60 months for Negligent Child Abuse Resulting in Serious Bodily Injury. It consolidated the misdemeanor count of Assault on a Child Under Age 12 with the Intentional Child Abuse count.

Defendant appealed, arguing there was insufficient evidence to support his conviction for Negligent Child Abuse, insufficient evidence of the EHAC aggravating factor, and that his trial counsel had rendered ineffective assistance by failing to object to the trial court's jury instruction on EHAC. We held in the previous appeal there was no error in the conviction or submission of EHAC to the jury, and dismissed his claim for ineffective assistance of counsel without prejudice to file an MAR with

the trial court. 272 N.C. App. 695, 845 S.E.2d 209, 2020 WL 4462549 (unpublished).

Defendant filed an MAR asserting ineffective assistance by both his trial and appellate counsel, which the trial court denied. We allowed Defendant's Petition for Writ of Certiorari and now review the trial court's Order denying Defendant's MAR.

## Issues

The issues on appeal are whether the trial court erred in denying Defendant's claims: (I) his trial counsel was ineffective in (A) failing to object to the jury instruction on the aggravating factor that Defendant's crime was extremely heinous, atrocious, or cruel, and making statements to the jury which conceded this factor; (B) failing to object to the jury instruction on the aggravating factor that the victim was very young; (C) failing to present available mitigation evidence at sentencing; and (D) failing to adequately negotiate a plea bargain; and (II) his appellate counsel was ineffective in (A) presenting an inadequate argument that there was insufficient evidence to support Defendant's conviction for Negligent Child Abuse; and (B) failing to argue the trial court erred in admitting into evidence Defendant's phone call to his wife; (III) without holding an evidentiary hearing.

## Analysis

"Our review of a trial court's ruling on a defendant's MAR is whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court." *State v. Peterson*, 228 N.C. App. 339, 343, 744 S.E.2d 153, 157 (2013)

(citation omitted). "The trial court's findings of fact are binding if they are supported by competent evidence and may be disturbed only upon a showing of manifest abuse of discretion. However, the trial court's conclusions are fully reviewable on appeal." *State v. Thomsen,* 242 N.C. App. 475, 485, 776 S.E.2d 41, 48 (2015) (citation omitted).

Defendant in his MAR alleges both his trial and appellate counsel rendered ineffective assistance. The right to effective assistance of counsel is guaranteed by the Sixth Amendment to the United States Constitution. *State v. Braswell*, 312 N.C. 553, 561, 324 S.E.2d 241, 247 (1985). The United States Supreme Court in *Strickland v. Washington* set out a two-pronged test to determine when a defendant has received ineffective assistance. First, the defendant must show their counsel's performance was deficient, meaning counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. 668, 687, 80 L.Ed.2d 674 (1984). The defendant must show "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the defendant must show the deficient performance prejudiced the defense: that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. This requires the defendant to show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. This "reasonable probability" standard is less exacting than that required to show prejudice in a plain error analysis. *State v. Lane*, 271 N.C. App. 307, 316, 844 S.E.2d 32, 40-41 (2020). While

under this reasonable probability standard "[t]he likelihood of a different result must be substantial, not just conceivable," *Harrington v. Richter,* 562 U.S. 86, 112, 178 L.Ed.2d 624 (2011), "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland,* 466 U.S. at 693.

I.  Ineffective Assistance by Trial Counsel

A. *Especially Heinous, Atrocious, or Cruel Aggravating Factor*

Committing an offense in a manner that is "especially heinous, atrocious, or cruel" is among the aggravating factors recognized by our General Statutes. N.C. Gen. Stat. § 15A-1340.16(d)(7) (2023). The trial court submitted this factor to the jury as an aggravator for Defendant's Negligent Child Abuse count, and the jury found the aggravator existed. Defendant argues his trial counsel was ineffective in failing to object to the instruction given by the trial court, which submitted the question of EHAC but did not define it for the jury:

> On the charge of felonious child abuse by reckless disregard for human life in the care of a child resulting in serious bodily injury, do you find from the evidence beyond a reasonable doubt the existence of the following aggravating factors?
>
> One: The offense was especially heinous, atrocious or cruel.

As we noted in the prior appeal in this case, it is error for the trial court not to define EHAC in its jury instruction. 272 N.C. App. 695, 845 S.E.2d 209 at *7 (citing *State v. Houser,* 239 N.C. App. 410, 420-21, 768 S.E.2d 626, 633-34 (2015)). We dismissed the ineffective assistance claim because we could not determine on the

Record whether counsel's failure to request further jury instructions constituted a reasonable trial strategy. *Id.* at *8. In resolving Defendant's MAR, the trial court concluded the failure to request an instruction defining EHAC constituted objectively unreasonable performance, satisfying the first prong of the *Strickland* inquiry. However, it also concluded Defendant failed to show prejudice as a result of the deficient performance.

The State does not argue defense counsel's performance was reasonable, only that Defendant was not prejudiced thereby, adopting the reasoning explained by the trial court in its order. Defendant argues there is a reasonable possibility that, but for his counsel's failure to object to the EHAC instruction, the trial court would have defined the aggravator to the jury, the jury would not have found its existence, and Defendant would have received a less severe sentence for his Negligent Child Abuse conviction. Because it is dispositive, we address the prejudice prong of the ineffective assistance analysis. *See Strickland,* 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.")

The MAR judge also presided over Defendant's trial and sentencing and in the Order stated that, had the jury not found the existence of the EHAC aggravator, his sentencing determination would not change:

> Even assuming *arguendo* that Defendant is granted a new sentencing hearing and the jury does not find the EHAC aggravating factor, the undersigned, in my sound

discretion, would still aggravate Defendant's sentence on the basis of that the "victim was very young" aggravating factor outweighs any mitigating factors.

Defendant argues this reasoning is impermissible as it reflects a re-weighing of aggravating and mitigating factors without conducting a *de novo* sentencing hearing. Our Supreme Court has held that our appellate courts, upon holding an aggravating factor was found in error, may not re-weigh the remaining aggravating and mitigating factors but must remand the case for a new sentencing hearing. *State v. Ahearn,* 307 N.C. 584, 602, 300 S.E.2d 689, 701 (1983) ("[I]n every case in which it is found that the judge erred in a finding or findings in aggravation and imposed a sentence beyond the presumptive term, the case must be remanded for a new sentencing hearing.").

Our courts have not addressed whether this reasoning applies when the trial court, and indeed the same judge who made the initial sentencing determination, conducts such a post hoc reweighing of the sentencing factors. The trial court's involvement relieves one consideration supporting the grant of a new hearing: that appellate courts are not competent to balance aggravating and mitigating factors. *See Ahearn* at 602, 300 S.E.2d at 701 ("It is only the sentencing judge who is in a position to re-evaluate the severity of the sentence imposed in light of the adjustment."). But competence is only one reason our courts have recognized this requirement. When a defendant is resentenced, "each sentencing hearing in a particular case is a *de novo* proceeding." *State v. Abbott,* 90 N.C. App. 749, 751, 370 S.E.2d 68, 69 (1988).

- 10 -

Accordingly, "the trial court must make a new and fresh determination of the sufficiency of the evidence underlying each factor in aggravation and mitigation . . . without regard to the findings in the prior sentencing hearings." *State v. Jarman*, 238 N.C. App. 128, 131, 767 S.E.2d 370, 372 (2014) (citations omitted).

We need not resolve this question—whether a trial court may determine it would have imposed the same sentence in the absence of an alleged error and conclude therefore the defendant did not suffer prejudice as a result of the error. Defendant's argument may have merit but, presuming without deciding the trial court's prejudice analysis was erroneous, Defendant still cannot show prejudice. Because the trial court's analysis rested on the trial court's decision, it did not address whether the *jury's* decision was influenced by the lack of instruction. Addressing that question now, for the reasons discussed below, we hold there is not a reasonable probability the jury would have failed to find EHAC had the aggravator been more specifically defined.

Although there is no pattern jury instruction defining EHAC in non-capital cases, our Supreme Court has stated "it is instructive to turn to our capital cases for a definition of an especially heinous, atrocious, or cruel offense." *State v. Blackwelder*, 309 N.C. 410, 413, 306 S.E.2d 783, 786 (1983). In the capital context, the pattern instruction regarding EHAC provides:

> In this context heinous means extremely wicked or shockingly evil; atrocious means outrageously wicked and vile; and cruel means designed to inflict a high degree of

> pain with utter indifference to, or even enjoyment of, the suffering of others. However, it is not enough that this murder be heinous, atrocious or cruel as those terms have just been defined. This murder must have been especially heinous, atrocious or cruel, and not every murder is especially so. For this murder to have been especially heinous, atrocious or cruel, any brutality which was involved in it must have exceeded that which is normally present in any killing, or this murder must have been a conscienceless or pitiless crime which was unnecessarily torturous to the victim.

N.C.P.I.—Crim. 150.10. This pattern instruction provides "constitutionally sufficient guidance to the jury" as to the meaning of the words "especially heinous, atrocious, or cruel." *State v. Tirado*, 358 N.C. 551, 596-97, 599 S.E.2d 515, 545 (2004).

"In non-capital cases, the determination of whether EHAC exists is focused on whether the facts of the case disclose excessive brutality, or physical pain, psychological suffering, or dehumanizing aspects not normally present in that offense.*" Houser*, 239 N.C. App. at 421, 768 S.E.2d at 634 (cleaned up). For example, the trial court in this case in part declined to submit this factor on the charge of Intentional Child Abuse Inflicting Serious Bodily Injury because of the heinousness and cruelty intrinsic to the charge itself.

The underlying charge for which this aggravator was submitted was Negligent Child Abuse Inflicting Serious Bodily Injury:

> A parent or any other person providing care to or supervision of a child less than 16 years of age whose willful act or grossly negligent omission in the care of the child shows a reckless disregard for human life is guilty of a Class E felony if the act or omission results in serious

bodily injury to the child.

N.C. Gen. Stat. § 14-318.4(a4). The conduct underlying this charge, as the jury was instructed, was Defendant's refusal to provide prompt medical care for Mike when he was injured and unresponsive.

Defendant's conduct beyond that which satisfied the elements of the charge clearly reflect cruelty, as defined by the omitted jury instruction as "inflicting a high degree of pain with utter indifference to, or even enjoyment of the suffering of others"—a "dehumanizing aspect[] not normally present in the offense." *Houser*, 239 N.C. App. at 421, 768 S.E.2d at 634. Defendant not only failed to obtain medical treatment for Mike, but refused repeated requests from his wife to do so, and his statements reflect a complete lack of concern for Mike's life and well-being. Defendant called Erin and told her "I think your son is dead." His description of his conduct showed not only a lack of remorse, but a refusal to accept culpability and deflection of blame to her: "You should have left him at mom's. He literally fucked up my whole office and I threw his ass across the room." Erin then asked him to take Mike to the hospital. Despite the severity of Mike's injuries, which Defendant observed had caused Mike's eyes to roll "in the back of his head" and made him believe Mike might be dead, Defendant told Erin "I am not taking him to the hospital, No. I will not." When Erin asked him to take Mike to her mother's, Defendant again refused and hung up the phone.

Defendant's actions overwhelmingly evidence an "utter indifference" to Mike's

suffering in the wake of his actions. On those facts, the jury found Defendant's conduct was extremely heinous, atrocious, or cruel. Had the jury received the above instruction, there is not a reasonable probability it would have found otherwise.

Defendant also argues his trial counsel was ineffective in his closing argument prior to the submission of aggravating factors to the jury. He argues his counsel admitted to the jury that his conduct was especially heinous, atrocious, or cruel, thereby admitting Defendant's guilt without permission in violation of *State v. Harbison*, 315 N.C. 175, 337 S.E.2d 504 (1985). He also argues his counsel's characterization of the language used in the phone call as "horrible" likewise constitutes ineffective assistance of counsel.

During arguments, Defendant's counsel stated:

> That phone call I told you in my close originally is horrible; right? We all agree with that. But what did that phone call—if you take out the verbiage of the phone call, what was said in the phone call? Let's be honest, what completely convicts him, what you guys found him guilty of, is the phone call; right? What is he asking his wife to do? If you take out the colorful, horrible language, "Come home. Come home."

> [Mike] is fine. He's okay. You've heard her testify he's doing well. There's no evidence that it's especially heinous or atrocious. If the crime were it's especially heinous or atrocious what was in the phone call, I would agree 100 percent. It's not what's in the phone call; right? He asked her to come home.

"[I]neffective assistance of counsel, per se in violation of the Sixth Amendment, has been established in every criminal case in which the defendant's counsel admits

the defendant's guilt to the jury without the defendant's consent." *Harbison*, 315 N.C. at 180, 337 S.E.2d at 507-08. This includes "situations in which defense counsel impliedly concedes his client's guilt without prior authorization." *State v. McAllister*, 375 N.C. 455, 473, 847 S.E.2d 711, 722 (2020).

However, defense counsel's statements "must be viewed in context to determine whether the statement was, in fact, a concession of defendant's guilt of a crime[.]" *State v. Mills,* 205 N.C. App. 577, 587, 696 S.E.2d 742, 748-49 (2010). A review of defense counsel's argument shows there was no such concession of guilt. Defense counsel employed a specific trial strategy: acknowledging that the language used by Defendant in the phone call was "horrible," but arguing that the *conduct* reflected by the phone call was not extremely heinous, atrocious, or cruel. He characterizes the phone call as, despite its language, a plea for his wife to "Come home. Come home," and help him with their injured child. Similarly, his statement "If the crime were it's especially heinous or atrocious what was in the phone call, I would agree 100 percent. It's not what's in the phone call; right?" is an attempt to focus the jury's attention not on the words used in the call, but to place greater importance on his characterization of the conduct reflected by that call. Rather than conceding the existence of the aggravating factor, defense counsel argued "there's no evidence that it's especially heinous or atrocious" and requested the jury not find either aggravating factor presented. *See State v. Hinson,* 341 N.C. 66, 78, 459 S.E.2d 261, 268 (holding no *Harbison* error where "[d]efense counsel maintained throughout

the trial" that defendant did not kill victim). The strategic choice to focus on Defendant's conduct, rather than the specific words spoken on the phone call, does not constitute deficient performance as "counsel is given wide latitude in matters of strategy, and the burden to show that counsel's performance fell short of the required standard is a heavy one for defendant to bear." *State v. Fletcher,* 354 N.C. 455, 482, 555 S.E.2d 534, 551 (2001). Defendant's counsel did not concede guilt, and Defendant has failed to overcome the "strong presumption that counsel's conduct falls within the wise range of reasonable professional assistance." *Strickland,* 466 U.S. at 689.

### B. *Very Young Victim Aggravating Factor*

Defendant also argues the jury instruction on the aggravating factor that the "victim was very young" was inadequate, that his trial counsel's failure to object to the instruction constituted ineffective assistance of counsel, and the MAR court therefore erred in concluding Defendant had failed to show his trial counsel was ineffective.

Our statutes provide a defendant may be sentenced in the aggravated range if "[t]he victim was very young, or very old, or mentally or physically infirm, or handicapped." N.C. Gen. Stat. § 15A-1340.16(d)(11). As with EHAC, the trial court only submitted to the jury the question of whether the victim was very young, without defining or limiting it as an aggravator.

Our Supreme Court has held the existence of this factor is dependent not only on the age of the victim, but on the increased vulnerability to the offense in question

that results from the victim's age:

> Age should not be considered as an aggravating factor in sentencing unless it makes the defendant more blameworthy than he or she already is as a result of committing a violent crime against another person. A victim's age does not make a defendant more blameworthy unless the victim's age causes the victim to be more vulnerable than he or she otherwise would be to the crime committed against him or her, as where age impedes a victim from fleeing, fending off attack, recovering from its effects, or otherwise avoiding being victimized.

*State v. Hines*, 314 N.C. 522, 525, 335 S.E.2d 6, 8 (1985). In order for the age of the victim to be used as an aggravating factor, it must appear "that the defendant took advantage of the victim's relative helplessness to commit the crime or that the harm was worse because of the age or condition of the victim." *State v. Monk*, 63 N.C. App. 512, 523, 305 S.E.2d 755, 762 (1983). This may depend on the specific facts of the underlying offense. For example, while "assaulting a frail, elderly person may be more blameworthy than assaulting a strong young man," *State v. Gaynor*, 61 N.C. App. 128, 131, 300 S.E.2d 260, 262 (1983), we have generally held "[t]he age of the victim to a shooting offense is irrelevant." *Monk* at 523, 305 S.E.2d at 762. In *Hines* the sixty-two-year-old shooting victim's age did not by itself "demonstrate that he was more vulnerable to the assault at issue in this case than a younger person would have been" and the evidence therefore did not support age as an aggravating factor. 314 N.C. at 526, 335 S.E.2d at 8. If a victim would have died from being shot "regardless of the age or strength of the victim," their age may not be used as an aggravating

factor. *Id.*

The State argues Defendant cannot show his trial counsel's failure to request additional instruction on this factor constituted deficient performance because the instruction given by the trial court was adequate. Indeed, the pattern jury instruction advises trial courts to submit the question of whether "The victim was [very young] [very old] [mentally infirm] [physically infirm] [handicapped]," without more.[2] N.C.P.I.—Crim. 204.25. But pattern instructions are binding on neither the trial court nor our decision: "Although pattern jury instructions are normally the preferred method of jury instruction, they have neither the force nor effect of the law and they may be erroneous and need alteration to conform with the law." *State v. Thomas*, __ N.C. App. __, __, 921 S.E.2d 847, 857 (2025) (citations omitted). While we are unaware of any prior decision of our courts addressing the propriety of the pattern instruction on this aggravating factor, the trial court "has the duty to declare and explain the law arising on the evidence relating to each substantial feature of the case." *State v. Snelling*, 231 N.C. App. 676, 679, 752 S.E.2d 739, 742 (2014) (citation omitted). The current instruction may be inadequate to communicate the above-described law regarding this factor.

However, this does not mean Defendant's counsel rendered deficient performance by failing to request an instruction beyond the pattern jury instruction.

---

[2] Unlike EHAC, there is no additional guidance for this aggravating factor in the pattern instructions for capital sentencing.

To show counsel's performance was deficient, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "[T]he burden to show that counsel's performance fell short of the required standard is a heavy one for defendant to bear." *State v. McNeill*, 371 N.C. 198, 218-19, 813 S.E.2d 797 (2018).

Defendant has identified and we are aware of no authority holding an attorney's failure to request jury instructions beyond those contained in our pattern instructions constituted deficient performance. Additionally, although the above caselaw implies a definition of the "very young" aggravating factor that goes beyond the pattern instruction, our courts have not previously addressed the adequacy of that instruction. Defendant's trial counsel did not have the benefit of any such analysis when deciding whether to object to the trial court's proposed instruction. Under these circumstances, we do not hold counsel's failure to object to a proposed instruction which matched the relevant pattern instruction constitutes deficient performance, as "a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689. Defendant cannot meet the high burden required to show deficient performance regarding this jury instruction.

*C. Failure to Present Mitigation Evidence*

Defendant next argues the trial court erred by denying his claim that his trial counsel rendered ineffective assistance by failing to present available mitigation evidence at sentencing "which would have supported several statutory mitigating factors." In his briefing, Defendant does not identify the mitigating factors or the evidence he alleges his trial counsel should have produced. Theories of relief which are alluded to but not supported by substantive arguments are waived on appeal. *Bridges v. Parrish*, 222 N.C. App. 320, 328, 731 S.E.2d 262, 268 (2012); N.C. R. App. P. 28(a) (2025). Because this issue bears on Defendant's argument that the trial court should have conducted an evidentiary hearing, we briefly address the mitigation evidence identified in Defendant's MAR. Even if Defendant had not abandoned this issue, he has neither in his briefing nor in his MAR shown his trial counsel was ineffective by failing to present this evidence.

In his MAR, Defendant alleges the existence of two statutory mitigating factors his attorney should have presented at sentencing: that he was suffering from a mental or physical condition that reduced his culpability, and that he has a good treatment prognosis and a workable treatment plan is available. The MAR additionally alleges:

> Upon information and belief, a medical or mental health expert would have explained to the sentencing judge how Defendant's assaultive conduct, as well as his subsequent conduct and statements after M.J. was injured, were attributable to his anxiety, panic attacks, and depression and their symptoms, and the side effects of prescribed medication, rather than to a lack of remorse or callousness.

"A motion for appropriate relief made after the entry of judgment must be supported by affidavit or other documentary evidence if based upon the existence or occurrence of facts which are not ascertainable from the records and any transcripts of the case or which are not within the knowledge of the judge who hears the motion." N.C. Gen. Stat. § 15A-1420(b)(1). The only evidence Defendant presented the trial court in support of this is his own affidavit, in which he states:

> My lawyer was aware before trial that I suffered from anxiety and depression. However, to the best of my knowledge, he did not consult with my medical doctor or therapist about my condition, nor did he consult with any mental health expert regarding how my mental health condition might have affected or mitigated the offenses for which I was charged.

Defendant presents no evidence as to how his mental health conditions affected his behavior. There is no indication from Defendant's affidavit that his mental health conditions actually affected his behavior or culpability, only that his attorney failed to consult with an expert regarding how his condition "might have" mitigated the offense. "While a mental condition may be capable of reducing a defendant's culpability for an offense, evidence that the condition exists, without more, does not mandate consideration as a mitigating factor." *State v. Jackson,* 119 N.C. App. 285, 291, 458 S.E.2d 235, 240 (1995). The defendant must show his condition reduced his culpability. *State v. Barranco,* 73 N.C. App. 502, 511, 326 S.E.2d 903, 910 (1985). Defendant did not support his MAR with any evidence supporting his contention that his conditions reduced his blameworthiness, either from medical professionals who

had treated him personally or other mental health experts. Indeed, there is no indication from his affidavit that he has been professionally diagnosed or received treatment for his conditions. The MAR and accompanying affidavit thus do not show the existence of any additional mitigating factors, but only speculate as to their possibility.

Evidence containing merely "general allegations and speculation" is insufficient to support an MAR. *State v. Rollins*, 224 N.C. App. 197, 201, 734 S.E.2d 634, 636 (2012). When a defendant's MAR offers insufficient evidence to support his claim, the trial court may properly deny the motion without conducting an evidentiary hearing. *State v. Walker*, 385 N.C. 763, 765, 898 S.E.2d 661, 663 (2024). The MAR court did not err by holding Defendant had not shown his trial counsel's failure to present mitigation evidence at sentencing constituted ineffective assistance.

### D. *Ineffective Assistance of Counsel in Plea Bargaining*

Finally, Defendant argues his trial counsel was ineffective in failing to engage in plea bargaining. The Sixth Amendment right to counsel extends to pretrial stages of criminal proceedings, including plea bargaining. *Lafer v. Cooper*, 566 U.S. 156, 162-67, 182 L.Ed.2d 398 (2012). Defendant alleged in his MAR that his counsel never engaged in plea negotiations with the State, constituting deficient performance. In his supporting affidavit, he stated:

> My trial lawyer never presented me with any type of plea

> offer and to my knowledge he did not seek to negotiate a
> plea agreement on my behalf. Had I been presented with a
> reasonable plea offer, I would have accepted it. As it was, I
> was never given any plea offer until the day of trial when I
> was told I could plead guilty to all charges and be sentenced
> in the aggravated range. Since this was no plea offer at all,
> I did not accept it.

During pretrial criminal proceedings, counsel has been recognized to have a duty to communicate plea offers and give competent advice as to whether to accept a plea offer or go to trial. *State v. McDougald,* 284 N.C. App. 695, 876 S.E.2d 648 (2022); *Burt v. Titlow*, 571 U.S. 12, 25, 187 L.Ed.2d 348 (2013). However, we are aware of no authority addressing counsel's responsibility to engage in plea bargaining. Assuming both that: (1) Defendant's attorney failed to engage in plea bargaining; and (2) such failure constitutes deficient performance, Defendant has failed to show he was prejudiced thereby. Defendant provides no evidence tending to show a plea offer would have been available had his attorney engaged in plea bargaining, or evidence of the type of plea bargain that might be available in this situation. The State, prior to trial, presented Defendant with the only plea option it found acceptable: guilty on all charges and the State would request an aggravated sentence. The State further indicated in its response to Defendant' MAR that it was not willing to entertain any lesser plea. Defendant's ineffective assistance claim is therefore supported only by "general allegations and speculation," and the trial court correctly denied it without holding an evidentiary hearing. *Rollins*, 224 N.C. App. at 201, 734 S.E.2d at 636.

II.   Appellate Counsel

Defendant in his MAR also alleged deficient performance by his appellate counsel in his previous appeal to this Court. We apply the same two-part *Strickland* test when evaluating whether a defendant's appellate counsel rendered ineffective assistance. *State v. Baskins,* 260 N.C. App. 589, 600, 818 S.E.2d 381, 391 (2018). Defendant must show the appellate representation "did not fall within the range of competence demanded of attorneys in appellate cases." *Id.* (citing *Strickland*, 466 U.S. at 687). Generally, the decision not to pursue a claim on appeal is "not an error of such magnitude that it render[s] [counsel's] performance constitutionally deficient under the test of *Strickland."* *Smith v. Murray*, 477 U.S. 527, 535, 91 L.Ed.2d 434 (1986). There is a presumption that "the challenged action might be considered sound [appellate] strategy." *Strickland,* 466 U.S. at 689. A defendant may overcome this presumption by showing "his counsel was objectively unreasonable in failing to find arguable issues to appeal[.]" *Robbins*, 528 U.S. 259, 285, 145 L.Ed.2d 756 (2000). The defendant must also show he was prejudiced by his appellate counsel's deficient performance. *Baskins*, 260 N.C. App. at 602, 818 S.E.2d at 392.

A. *Insufficient Evidence of Negligent Child Abuse*

Defendant first argues the MAR court erred in denying his claim that his appellate counsel provided ineffective assistance when arguing on appeal there was insufficient evidence to support Defendant's conviction for Negligent Child Abuse Inflicting Serious Bodily Injury. Defendant's appellate counsel argued the State failed to meet its burden of "presenting substantial evidence connecting Defendant's grossly

negligent omission to a serious bodily injury separate from the already and intentionally inflicted TBI and its associated injuries."

Section 14-318.4(a4) of our General Statutes provides:

> A parent or any other person providing care to or supervision of a child less than 16 years of age whose willful act or grossly negligent omission in the care of the child shows a reckless disregard for human life is guilty of a Class E felony if the act or omission results in serious bodily injury to the child.

N.C. Gen. Stat. § 14-318.4(a4). Defendant argues his appellate attorney did not "adequately and correctly present" to this court the argument that the evidence did not support the element that "the act or omission results in serious bodily injury to the child."

A "serious bodily injury," as defined by the trial court, is a "bodily injury that creates a substantial risk of death or that results in prolonged hospitalization." N.C. Gen. Stat. §14-318.4(d); *see also State v. Williams*, 150 N.C. App. 497, 503, 563 S.E.2d 616, 620 (2002) ("[W]e are limited to that part of the definition set forth in the trial court's instructions to the jury."). Defendant emphasizes that this definition consists of two parts: 1) a bodily injury; and 2) the results of that injury—a substantial risk of death or prolonged hospitalization. Defendant argues his appellate counsel failed to properly frame this element of the charge to emphasize that it consists of *both* the injury and result and argued only that there was no evidence of a "serious bodily injury." The negligent omission underlying the charge in this case is Defendant's

failure to seek prompt medical care for Mike. Defendant argues that, while this failure to seek medical care may have created a substantial risk of death, it did not result in a "bodily injury" separate from that caused by Defendant's intentional act. He argues that, because his appellate counsel collapsed the two portions of this element into a single argument, this Court's analysis then focused on the second portion—the substantial risk of death or prolonged hospitalization—and overlooked whether a bodily injury actually occurred as a result of Defendant's negligence.

This is not reflected in the briefing submitted by Defendant's appellate counsel in his prior appeal. While Defendant's previous brief does not perform the specific splitting of "serious bodily injury" into the two components Defendant identifies, the argument in that brief focuses heavily on whether an additional physical injury resulted from Defendant's negligence. The brief repeatedly identifies Mike's "TBI and its associated injuries" as resulting from Defendant's intentional act and argues the State presented no evidence of additional injuries Mike suffered from a lack of prompt medical treatment. Defendant's appellate counsel submitted an adequate argument that properly raised the issue of whether an additional injury occurred such that the Negligent Child Abuse charge was supported by the evidence. We cannot say that counsel's performance was deficient—that failing to make the distinction Defendant identifies is an error at all, much less an error "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

Likewise, a review of our analysis in the prior appeal clearly shows Defendant suffered no prejudice. We noted the evidence supported a finding Mike had suffered "an additional serious bodily injury—an untreated brain bleed that 'creates a substantial risk of death.' " 272 N.C. App. 695 at *6. We cited our decision in *State v. Mosher* for the proposition that injuries seeming the same, resulting from separate acts or omissions, may give rise to both intentional and negligent child abuse charges when a defendant's conduct in one charge exacerbates the injuries from the other. 235 N.C. App. 513, 761 S.E.2d 204 (2014). It is clear from the text of our opinion that the previous panel considered exactly the argument Defendant identifies, and the additional framing Defendant proposes would have made no difference. Moreover, reviewing Defendant's argument anew with the benefit of this framing, we do not now hold that a different result would be appropriate. The evidence at trial supported a finding that Mike suffered an additional injury: that the delay in treatment allowed him to continue bleeding into his skull, compressing his brain in a way that did not happen simply as a result of trauma, but time spent without medical intervention to relieve that bleed. This compression created a substantial risk of death. 272 N.C. App. 695 at *6. Because there was substantial evidence supporting Defendant's conviction, his appellate counsel was not ineffective in failing to have that conviction overturned on appeal. *See State v. Todd,* 290 N.C. App. 448, 464, 892 S.E.2d 240, 252 (2023) ("[B]ecause we have concluded the State presented sufficient evidence Defendant was the perpetrator of the offense [he] cannot show prejudice.").

B. *Admission of Telephone Recording*

Defendant also argues his appellate counsel provided ineffective assistance by failing to argue on appeal that the trial court erred in admitting the recording of the phone call he made to his wife.

Defendant argues the recording should have been excluded based on our statutory wiretapping laws. It is generally unlawful to intercept a telephone communication. N.C. Gen. Stat. § 15A-287(a); 18 U.S.C. § 2511 (2025). When a wire or oral communication is unlawfully intercepted "no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court[.]" 18 U.S.C. § 2515. However, there is an exception when one of the parties to a telephone conversation consents to the interception. 18 U.S.C. § 2511(2)(c); N.C. Gen. Stat. § 15A-287(a).

Defendant argues the State presented no evidence that either Defendant or Erin consented to the interception and recording of the phone call. The State argues it presented evidence showing Erin was aware calls at her work were recorded and she therefore impliedly consented to the recording. There is no requirement that consent to recording be express: implied consent as a result of awareness of the recording is sufficient for a call to be lawfully intercepted. For example, we have held that parties to recorded conversations from jail telephones, which warn at the beginning of each call that the call is subject to monitoring and recording, consent to their interception. *State v. Price*, 170 N.C. App. 57, 65, 611 S.E.2d 891, 897 (2005).

Continuing a conversation with knowledge the phone call is subject to monitoring constitutes implied consent to interception. *Id.* at 66, 611 S.E.2d at 897.

In this case, Defendant's call was placed to Erin's phone number at the Coast Guard. Erin testified she knew "all incoming and outgoing phone calls were subject to monitoring and recording." She had also signed a rules and regulation document that gave notice that "SCC telephones are at all times subject to monitoring." Because she understood the phone call could be monitored, she consented to that monitoring by engaging in the phone conversation with Defendant.

Defendant argues that, because there was no warning given to Erin during the phone call itself, our precedent concerning jail phone calls is inapposite. Defendant cites no authority requiring that a warning be given immediately prior to the phone call in order to infer a party consented, and we decline to create such a requirement.

Erin testified she was aware of the recording policy at the time of the call. Thus, there was sufficient evidence supporting the trial court's admission of the phone call over Defendant's objection the call was illegally intercepted. The trial court did not err in admitting the evidence, and Defendant's appellate counsel could not have successfully argued this issue on appeal. Because Defendant would not have prevailed on this issue, it was not "plainly stronger" than the other issues raised on appeal, and Defendant cannot show his attorney's decision not to raise this issue on appeal constituted deficient performance. *Todd*, 290 N.C. App. at 460, 892 S.E.2d at 250. Consequently, the MAR court did not err by finding Defendant had failed to show

his appellate counsel had rendered ineffective assistance by declining to argue the trial court erred by admitting the phone call.

III.    Summary Decision

Defendant last argues the trial court erred by denying his Motion without conducting an evidentiary hearing. When resolving an MAR, the trial court "must determine . . . whether an evidentiary hearing is required to resolve questions of fact." N.C. Gen. Stat. § 15A-1420(c)(1). A hearing is required "unless the motion presents assertions of fact which will entitle the defendant to no relief even if resolved in his favor, or the motion presents only questions of law[.]" *State v. McHone*, 348 N.C. 254, 258, 499 S.E.2d 761, 763 (1998).

In arguing the trial court should have conducted an evidentiary hearing, Defendant does not identify any specific factual issues which the trial court was required to resolve. In our above review of each of the errors Defendant alleges, we cannot identify issues of fact which would require an evidentiary hearing. Most simply raise no possible issue of fact. Defendant's allegations that his trial counsel was ineffective are either properly resolved as a matter of law or otherwise unsupported by evidence. Accordingly, Defendant's claims do not create an obligation that the trial court hold an evidentiary hearing. *State v. Walker*, 385 N.C. at 765, 898 S.E.2d at 663. His contentions that his appellate counsel was ineffective fail to show deficient performance because neither argument would have succeeded.

The only possible issue of fact Defendant identifies on appeal regards the

possibility that his trial counsel was ineffective in failing to present available

mitigation evidence to the trial court, in that he failed to investigate and present

evidence of Defendant's mental health issues. In support of this, Defendant filed an

affidavit with the trial court stating:

> My lawyer was aware before trial that I suffered from anxiety and depression. However, to the best of my knowledge, he did not consult with my medical doctor or therapist about my condition, nor did he consult with any mental health expert regarding how my mental health condition might have affected or mitigated the offenses for which I was charged.

"An MAR court need not conduct an evidentiary hearing if a defendant's MAR

offers insufficient evidence to support his claim or only asserts general allegations

and speculation." *Walker*, 385 N.C. at 765, 898 S.E.2d 663. "The mere fact that some

ground for relief is asserted does not entitle defendant to a hearing or to present

evidence." *Id.* Defendant's bare allegations that he suffers from anxiety and

depression and that his trial counsel's failure to present evidence of this fact to the

trial court constitutes ineffective assistance cannot support his MAR. With no

additional evidence of his condition, its severity, or how it affects him, either from

Defendant or from a treating physician or other expert, this contention is purely

speculative. As discussed above, "evidence that the condition exists, without more,

does not mandate consideration as a mitigating factor." *Jackson,* 119 N.C. App. at

291, 458 S.E.2d at 240. Any argument that evidence of Defendant's alleged condition,

in this case, would have impacted his sentencing is purely speculative. Thus,

Defendant's claim was insufficient to require the trial court hold an evidentiary hearing. Therefore, the trial court did not err in deciding Defendant's MAR without an evidentiary hearing.

Consequently, the trial court did not err in denying Defendant's MAR.

## **Conclusion**

Accordingly, for the foregoing reasons, the trial court's Order denying Defendant's MAR is affirmed.

AFFIRMED.

Judges ZACHARY and MURRY concur.

Report per Rule 30(e).